**People of the State of Illinois, Plaintiff-Appellee, v. Maurice Roe, Defendant-Appellant.**

**Gen. No. 50,264.**

First District, Second Division.

October 26, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas J. Regan, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In a trial without a jury Maurice Roe was found guilty of armed robbery and aggravated assault and sentenced to the penitentiary for not less than 1 year nor more than 8 years. He seeks a reversal of the judgment.

Eugene Bullock, a retired steel mill worker, was walking in the vicinity of 4316 South Lake Park Avenue, Chicago, at about midnight on June 23, 1964. He talked to two women he met for the first time. One of the women named Racine, who lived in an apartment on the third floor at 4316 South Park Avenue, was caring for a baby in a buggy and Bullock was playing with the baby. He had never seen either woman before. The women asked him to buy beer for them. He gave one woman some money for the beer. He helped the Racine woman carry the buggy to her apartment on the third floor and she carried the baby. The Racine woman was between 25 and 30 years old, four feet something in height, dark complexion. Bullock testified that the woman who went for the beer returned one hour later with the defendant and another woman. He thought that the woman who went for the beer might be between 35 and 40 years of age and was short in stature. He did not know her name or the name of the other woman who came back with her and the defendant. Roe and the other two women came back together. Bullock testified that he was introduced to Roe in the apartment and that he had seen Roe three times or more before that night around 43rd Street.

Bullock testified that he paid special attention to Roe because he was interested to know whether Roe

453

was related to a person with a similar name who was an acquaintance of the witness; and this was why he looked at the defendant when he was introduced as "Mr. Maurice Roe." Bullock said he did not drink any of the beer. He testified that in about 20 minutes the defendant left the apartment. Bullock said that he (Bullock) left the apartment at 1:30 a. m. When he reached the sidewalk, he was attacked by 4 or 5 men, including Roe, the defendant. One of the men he knew as Stanley Washington and another he knew from seeing him around, James Burks. He knew Burks, Washington and Roe from seeing them around the neighborhood. Bullock testified that Roe put his arm around his neck and took his money while two others held his arms and punched him in the eye and hit him with a club that he thought was a child's ball bat. The witness said that Lake Park Avenue is well lighted at that point and that he knew the faces of his assailants when he saw them. He said that $100 in currency, his billfold, his watch and his hat were taken from him and he was struck with something across his nose. He went home after the attack and called the police who took him to the hospital. As a result of the beating, Bullock was in danger of losing his eye. Detective Fred Johnson contacted Bullock on July 9, 1964, Bullock went to a police station and identified Roe out of a lineup of 4 men. Detective Johnson testified that he spoke to Bullock on June 25, 1964 and on July 7, 1964. He placed Stanley Washington under arrest. He testified further that after a conversation with Washington, he placed Roe under arrest at the Hyde Park High School on July 9, 1964. Roe was 17 years of age at the time of the occurrence and he was a summer student at the High School. Johnson stated that a lineup was held at the police station that morning and Roe was identified by Bullock. After the lineup Detective

Johnson spoke with Roe in the presence of Bullock, the defendant's parents and another policeman. The defendant denied that he knew Bullock but stated that he had seen Bullock before. Detective Johnson testified further that Roe said he knew a robbery had taken place in the neighborhood and that he (defendant) was in the vicinity of the robbery on the night it occurred, but he denied participation therein. Detective Johnson testified that when he spoke to Bullock on June 25th, Bullock gave him the name of James Burks and he arrested Burks. Defendant denied robbing Bullock and stated that he was at home in bed at the time of the robbery. He said that his parents were in bed when he went to bed on the evening of the robbery.

The defendant argues that the People failed to prove him guilty beyond a reasonable doubt. The conviction is predicated upon the testimony of one witness, Eugene Bullock. Two days after the alleged assault and robbery, Bullock was questioned by the investigating officer. At that time he gave no description of his assailants. He did not tell Detective Johnson that he met a woman named Racine, who introduced him to a man named "Mr. Maurice Roe," to whom he paid particular attention and who left the apartment 20 minutes ahead of him or that Roe was one of the 4 or 5 men who choked, robbed and beat him. He gave Detective Johnson one name, James Burks. Sixteen days later he identified Maurice Roe, 17 years of age, in a police lineup with three other men whose ages ranged from 24 to 25 years. It is strange that on June 24th when Bullock was interviewed by Detective Johnson, he did not name Maurice Roe as one of the men who robbed and beat him. He knew Washington, Burks and Roe by name. The names of these persons would have been helpful to the police. It would seem that in the usual course of police procedures that Bullock would have been interrogated as to whether

he knew any of the persons who robbed and beat him. It would have been natural for Bullock to tell the police that he knew three of his assailants. No explanation appears as to why the woman named Racine was not called as a witness. After carefully reviewing the record we conclude that a reasonable doubt of guilt exists.

The judgment is reversed and the cause is remanded with directions for further proceedings not inconsistent with these views.

Judgment reversed and cause remanded with directions.

BRYANT and LYONS, JJ., concur.