THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OSSIE BEY JAMES (Impleaded), Defendant-Appellant.

(No. 55638; ▮▮▮▮▮▮▮)

First District—April 14, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Michael Weininger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Thomas R. Mulroy, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from a conviction, after a jury trial, for involuntary manslaughter* for which he was sentenced to a term of six to ten years.

On appeal he contends: (1) that the court erred in denying his pre-trial motion to suppress certain identification testimony; (2) that defendant was denied a fair trial by the prejudicial conduct of the prosecutor; and (3) that he was not proven guilty beyond a reasonable doubt.

The indictment charged defendant, together with Lawrence Davenport and Oliver Betts, with the murder of 13 year old Shirlene Jones. Davenport pleaded guilty to voluntary manslaughter and was sentenced to five to 12 years. Betts testified for the State at defendant's trial and subsequently pleaded guilty to involuntary manslaughter. He was sentenced to one year 11 months and 27 days which he had already served prior to the entry of his guilty plea.

The following relevant testimony was elicited at the pre-trial hearing to suppress the identification testimony of Edward Jones, brother of the deceased, who identified the defendant (as the person holding the gun just prior to the shooting) at a line-up held about one and one-half hours after the shooting and subsequently at the trial.

Burleigh Lester, a Chicago police officer, was called as a witness by the defendant. On the night in question, August 28, 1968, he was on patrol in the district where the shooting occurred. He received a flash message from the Communications Center that an individual had been shot at 6632 South Peoria (the deceased's home). He also received a flash message from a squad car at the scene, giving a physical description of the offenders. He believed three men were described: the first was described as 18 to 19 years old, Negro, about six feet, 170 pounds, wearing blue jeans and a black shirt; the second, 18 years old, five feet seven

---

* Section 9—3(a) of the Illinois Criminal Code, Ill. Rev. Stat. 1969, ch. 38, par. 9—3(a), defines Involuntary Manslaughter as follows:

"A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

inches, 150 pounds wearing blue jeans and a long sleeved green jersey shirt; the third, a Negro, wearing a white shirt, and the same height as the second offender. The instant hearing was being held two years after the alleged incident but Lester still had an independent recollection of the aforesaid descriptions. He did not make out a police report. He and his partner cruised around the area looking for the offenders. He saw three male Negroes matching the given description at 65th and Sangamon. The three youths were walking on the sidewalk; they were the only three around. Before Lester stopped them, he and his partner had "talked to several people [teenagers] on the street, in the area." The three youths arrested were the defendant, Lawrence Davenport and another youth whose name Lester couldn't recall. After making the arrest, Lester searched the youths but found no weapons. The defendant was wearing blue jeans and a long sleeved green jersey shirt. The "only reason I [Lester] arrested them was from the description that I had received * * *." Lester then placed the three youths in the squadrol and drove to St. Bernard's Hospital. There he saw Officer Eddie King and told King that he had just picked up three suspects who fitted the descriptions given. Lester then took the youths to the police station and later turned them over to Officer King. Lester made no other arrests regarding the subject incident.

On cross-examination Lester stated that the place of the arrest was two and one-half blocks from the scene of the shooting. The arrest was at 10:30 P.M., ten minutes after he received the radio message and approximately 15 minutes after the shooting.

On redirect, Lester stated that it was common to receive a message from another police car rather than the Communications Center. He had reviewed an arrest report in the State's Attorney's file prior to coming to court.

Officer Eddie King was called by the defendant. He was on patrol on the night of the shooting. He first heard about the shooting at 10:15 P.M. from a message sent by the police Communications Center. He proceeded to 6632 South Peoria, picked up the body of a young girl (the deceased, Shirlene Jones) and drove to St. Bernard's Hospital. He did not recall seeing Officer Lester at the hospital but did recall conversing with him at the police station.

Edward Jones was called by the defendant. He identified the defendant at an eight man line-up held late that night. He stated that the defendant had "blue coveralls" at the time of the shooting and had nothing "on top."

Leo Wilkosz was called by the defendant. He is a Chicago police

officer and conducted the line-up at which Edward Jones identified the defendant. He believed the defendant was dressed in blue jeans and a long sleeved turquoise jersey-type sweater.

The motion to suppress the pre-trial identification and any subsequent in court identification of the defendant by Edward Jones was denied.

The following testimony was elicited at the trial.

Edward Jones testified for the State. He was the brother of the deceased, Shirlene Jones. He and his family live at 6632 South Peoria. On August 28, 1968, at about 10:15 P.M., he saw, through the front window of his house, a group of 10 or 12 boys crowded around his brother's (Levi Jones) motorcycle. He and his mother went onto the front porch and then walked down the stairs and stood near the sidewalk. One of the youths turned toward him and said, "[W]hat do you have to do with this?" The witness answered, "[W]ell, that is my brother." A few of the boys turned and walked toward the witness and his mother. The other members followed and the witness noticed a gun. "I saw a gun, one gun." Jones then identified the defendant as the person holding the gun. When Jones saw the weapon, he told his mother, "[C]ome on, let's go in the house." They walked up the stairs and he opened the door for her. They went in and as the door closed he heard a series of shots. He saw his sister, Shirlene Jones, who had been standing behind the door, lying on the floor bleeding. He didn't see who fired the shots. He immediately went back outside and saw the same group of boys running away from the house. He gave chase after them. On cross-examination Jones stated that before the shooting the group was standing 50 to 60 feet from his front porch. He saw no one else with a gun but the defendant. He observed the group for about seven seconds. He was positive that he saw the defendant even though he only saw him for a few seconds. He was about 15 to 18 feet from the group when he walked down the porch to the sidewalk. The defendant did not have a shirt on. Jones did not give a description of the defendant to anyone on the night in question. On redirect Jones stated that about an hour and one-half after the shooting he identified defendant at an eight man line-up at the police station.

Mrs. Cora Jones, mother of the deceased, was called by the State. Her testimony concerning the events which took place at her home on August 28, 1968, essentially corroborated the testimony of her son, Edward Jones, set forth above, including an in court identification of defendant as one she had seen in the group outside her house and she had seen a gun in his hand. She did not attend the line-up.

Officer Eddie King testified for the State. While assigned to patrol on August 28, 1968, he received a call, the nature of which was that a girl had been shot at 6632 South Peoria. He proceeded to that address

and recovered the body of the deceased, Shirlene Jones, and took her to the hospital. He said the lighting condition in the area "varies, good." There were street lights, lights from the playground across the street and lights from the entranceway, front room and porch of the Jones' house.

Officer Burleigh Lester testified for the State. His testimony was essentially a repetition of the testimony he gave at the hearing on the motion to suppress as set forth above.

Charles Rosenkranz testified for the State. He was a police officer on patrol on the night in question. He heard a radio broadcast that a girl had been shot at 6632 South Peoria. On cross-examination he said that he received no description of the alleged offenders over the air.

Oliver Betts testified for the State. He was indicted along with the defendant for the murder of Shirlene Jones. He had been in the Cook County Jail for 23 months. The State's Attorney asked Betts if he was a member of any gang Betts responded, "Yes." Defense counsel objected to the question but the objection was overruled after the State's Attorney represented that he would "connect this up." Betts then stated the name of the gang and that defendant was also a member. Defense counsel again objected to the line of questioning but his objection was overruled. Betts then stated that on the night in question he and others, including the defendant, were at the school yard across the street from the Jones' house. Levi Jones was in front of the house next to his motorcycle. The defendant came up to Levi Jones with a gun in his hand and told Levi to take him around the corner "to get a gangster." Levi's mother and brother then came out and a few words were exchanged. Levi told his mother and brother to go back into the house. The defendant started shooting toward the house. The mother (Mrs. Cora Jones, and brother (Edward Jones) were standing on the porch. The witness saw defendant fire one shot and then he ran. He heard about five shots. No one else in the group had a gun. Betts was eight feet from defendant when the gun was fired. He still has a charge of murder pending against him for his involvement in the subject incident. He has never been convicted of a crime. The State's Attorney has made no promises of leniency in return for his testimony; he testified to these things because they are true. Defense counsel then moved for a mistrial because the State failed to "tie up" Betts' testimony as to the gang membership with the issues in the case. After argument the court overruled the motion.

The defendant testified in his own behalf. He was the sole witness for the defense. He stated that on the night in question he and a group of friends played basketball at a church from about 9:00 P.M. to 10:00 P.M. At about 10:15 they walked through a school yard to 6632 South Peoria.

Levi Jones was in front of the house starting his motorcycle. The group stood around talking to Jones when an "old lady" (Mrs. Jones) and a "young man" (Edward Jones) came out of the house onto a porch. The two people walked down to the sidewalk. After an exchange of words Lawrence Davenport told the young man, "[I]t was not of his business, [Davenport was] cursing and stuff." Defendant then stated that he and the other boys knew the type of person Davenport was and started walking away slowly. "After we were a few houses away, we heard shots being fired, so we turned and looked. There was Davenport firing a gun in the direction of the building. So we started running  *  *  *." Some of the boys ran to Oliver Betts' house. Defendant and Davenport ran down the street and then started walking. At 65th and Sangamon they were stopped by police officers. They denied any knowledge of the crime. Defendant stated that he had no gun with him that night; that there were four or five guns in the group of boys; Davenport had a gun. On cross-examination defendant stated that he was lying when he told the police who stopped him that he knew nothing about the crime but that now he was telling the truth. Later that night, at the police station, he had an opportunity to talk to the police but said nothing about Davenport firing the gun. Defendant was then asked if he uses any other name. Defense counsel's objection to the question was sustained. The State's Attorney then asked defendant if he saw how the indictment read and defendant responded, "Yes." The State's Attorney then said, "Did you see the name, Stanley Jones, on that?" Defense counsel objected but the defendant answered, "Yes." A side-bar conference then took place with defense counsel moving for a mistrial due to the State's Attorney's reference to the other name listed on the indictment. After discussion the State's Attorney agreed to drop this line of questioning and the court overruled defendant's motion. When the jury returned, the court instructed it to disregard the last question and answer. During the remaining cross-examination and re-cross examination the State's Attorney prefaced three questions as follows: "Now Mr. James, is that correct?" On only one occasion did defense counsel object to the form of the question, said objection being sustained.

*Opinion*

Defendant first contends that the court erred in failing to suppress the pre-trial and subsequent in court identification testimony of Edward Jones. The written pre-trial motion to suppress was based on two contentions: (1) that the line-up procedures used were unfair and (2) that defendant was not advised of his right to have counsel present with him at the line-up. Subsequently defendant orally added another contention to the motion, alleging that the original arrest had been illegal

and that therefore any identification testimony stemming therefrom, "fruits" of the illegal arrest, (see *Wong Sun v. United States*, 371 U.S. 471; *Davis v. Mississippi*, 394 U.S. 721) had to be suppressed. After the testimony was given at the hearing, defense counsel presented his argument. At no point during this argument did he contend that the arrest of the defendant was unjustified because Officer Lester lacked probable cause to make it. Rather, counsel continually stressed the fact that defendant was denied the right to have counsel with him at the line-up. He went on to concede that even if such right had been denied defendant, any in court identification by Edward Jones would not be excludable. He stated:

"Very briefly, Judge. The Petitioner moves that on the basis of the evidence heard, that all evidence and testimony at the time of trial regarding the lineup identification be suppressed. However, we do not feel that we have sustained our burden of the testimony of Edward Jones as to his ability to testify in court as to what he said he saw."

Defendant now abandons the contentions argued below and contends that Jones' pre-trial identification testimony should have been suppressed under the theory that the arrest was illegal since "probable cause" was lacking. Furthermore, he now argues that the in court identification testimony of Jones should also have been suppressed; he conceded the contrary in the pre-trial hearing as noted above. Defendant might well be barred from raising the issue of "probable cause" on appeal since he failed to include it in his written pre-trial motion and never directed arguments thereto when the court was preparing to rule on the motion. See *People v. Nilsson*, 44 Ill.2d 244, 246, 247, 255 N.E.2d 432; *People v. Harris*, 105 Ill.App.2d 305, 312, 313, 245 N.E.2d 80.

Nevertheless we shall consider the legality of defendant's arrest without a warrant. In *People v. Higgins*, 50 Ill.2d 221, 227, 278 N.E.2d 68, 72, the court stated:

"[P]robable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty." (*People v. Peak*, 29 Ill.2d 343, 348.)

■■ Officer Burleigh Lester testified that he received a message from police Communications Center at approximately 10:20 P.M. He received a subsequent message from a police car on the scene describing three alleged offenders. He arrested three youths (one of whom was the defendant) because they matched the given descriptions. The arrest was made two and one-half blocks from the shooting and only 15 minutes

thereafter. These circumstances, known to Officer Lester at the time of the arrest, clearly show probable cause. See *People v. McCrimmon*, 37 Ill.2d 40, 43, 44, 224 N.E.2d 822.

The main thrust of defendant's argument is that the testimony of Officer Lester was not credible; *i.e.*, he was testifying two years after the occurrence; another police officer failed to hear the radio message describing the alleged offenders; Edward Jones failed to give a description to the officers on the scene; (Cora Jones did not testify at the pretrial hearing and at trial was not specifically asked whether she gave any descriptions to the police officers on the night in question;) and Edward Jones testified that defendant was wearing "nothing on top" while defendant was arrested wearing a green jersey shirt which admittedly matched the description of the second alleged offender.

■■■ However, issues of credibility are to be resolved by the trier of fact and the court's evaluation of the testimony will not be disturbed merely due to the existence of possibly conflicting evidence. (*People v. Hanna*, 42 Ill.2d 323, 328, 329, 247 N.E.2d 610; *People v. Peak*, 29 Ill.2d 343, 349, 194 N.E.2d 322.) We find that the identification testimony of Edward Jones was properly admitted.

Defendant next contends that prejudicial conduct of the prosecutor denied him the right to a fair trial. He cites the following incidents in support of his argument: (1) that the prosecutor referred to defendant's alleged alias, "Stanley Jones"; (2) that testimony was elicited to the effect that defendant was a member of a "gang"; and (3) that in the prosecutor's closing argument he promised the jury that Oliver Betts would be tried "at the proper time," the inference being that Betts had no motive to lie when he testified that the defendant fired the fatal shot.

■■ The name "Stanley Jones" was listed on the indictment which read, "Ossie Bey James otherwise called Stanley Jones." During cross-examination the prosecutor asked defendant whether he used any other name. Defense counsel's objection to the question was sustained. The prosecutor then asked defendant if he had read the indictment with the name "Stanley Jones" on it. Defense counsel's objection was again sustained, and after a side-bar conference the jury was instructed to disregard the last question and answer. The case cited by defendant to support his argument of prejudice is *People v. Dukes*, 12 Ill.2d 334, 146 N.E.2d 14, but it is factually inapposite to the instant case. In *Dukes* the prosecutor made "repeated" references to the defendant's alleged alias which was also listed on the indictment. He also made comments to the jury during his closing argument, without having adduced any evidence with re-

spect thereto, directly inferring that the placement of the alias on the indictment was not by mere chance but rather indicated that defendant's character was of a dubious nature. In *Dukes* defense counsel's objections to these statements were overruled. In the instant case the reference to defendant's alleged alias was improper, but no direct statements were made by the prosecutor inferring that this alleged alias reflected on defendant's character. Moreover, defense counsel's objections to the questions were sustained and the court instructed the jury to disregard the questions. We believe that any conceivable prejudice was obviated by the court's instruction.

■■ As to the elicitation of the testimony from Oliver Betts that he and the defendant were members of a gang for three years, we also conclude that this failed to deprive defendant of a fair trial. This evidence was admitted on the condition that the State's Attorney would connect it up with the issues in the case. The State argues that this was done since it showed that Betts knew the defendant well; this in turn would lend more credence to Betts' identification testimony. Also, the State claims that the reference to the gang related to the "underlying scheme" whereby the group of boys was crowded in front of Jones' house on the night in question. The fact that Betts knew the defendant could have been brought out without reference to the gang and the prosecutor did not tie up the reference to the issues in the case. However, there was only one reference made to defendant's membership and no statements were made to the effect that the gang was in any way associated with criminal activities. We do not believe this one reference was so prejudicial as to require reversal. See *People v. Jones,* (Ill.App.2d), 273 N.E.2d 423.

■■ Finally, defendant points to a statement made by the prosecutor in his rebuttal argument wherein he promised the jury that Oliver Betts, who was indicted along with the defendant, "will be tried." We believe this remark was a proper reply to statements made by defense counsel during his closing argument wherein, while attacking the credibility of Oliver Betts, he told the jury: "[I]n my opinion his testimony amounts to a flat, outright lie to save himself, * * *." Later in his argument he stated:

> "That is your only eye witness, a man who made a deal with the State to save himself, and the prosecution has the gall to vouch for his credibility."

As stated in *People v. Reyes,* (Ill.App.2d), 266 N.E.2d 539, 544:

> "It is well settled that whenever the argument of defense counsel invites or provokes a response on the part of the prosecutor, defendant

then cannot complain that he has been prejudiced by such response." [Cited cases omitted.]

■■■ Defendant's last contention is that he was not proven guilty beyond a reasonable doubt. The gist of defendant's argument is that the testimony of Oliver Betts was incredible and that therefore the conviction must be reversed. However, it goes without citation that issues of credibility are to be decided by the trier of fact. The testimony of an accomplice, if believed by the jury, is sufficient to sustain a conviction. (*People v. Hansen*, 28 Ill.2d 322, 332, 192 N.E.2d 359; *People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8.) In the instant case there was the additional incriminating testimony of Mrs. Cora Jones and Edward Jones. Although neither one saw the defendant fire the fatal shot that killed Shirlene Jones, they both testified that they saw defendant holding a gun just prior to the time they turned around to return to their house. Almost immediately thereafter the fatal shots were fired. Edward Jones stated that defendant was the only member of the group with a gun. Cora Jones also saw the gun in his hand. Their testimony strongly corroborates Betts' testimony and certainly supplied ample evidence to justify the jury's verdict.

The judgment of the circuit court is affirmed.

Judgment affirmed.

LORENZ, P. J., and ENGLISH, J., concur.