THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE ROSS, Defendant-Appellant.

First District (3rd Division)    No. 62857

Opinion filed June 3, 1976.

James R. Streicker and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and David A. Novoselsky, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, after a bench trial, was found guilty of rape and was sentenced to a term of not less than four nor more than six years. On appeal he contends that he was not proved guilty beyond a reasonable doubt; or in the alternative, that his maximum sentence should be reduced. We affirm.

The complainant testified at trial as follows. On September 23, 1974, she resided with her four children in a small bungalow. At approximately 1 a.m., the children and her houseguests—a husband and wife—were sleeping upstairs, and complainant was sleeping on a couch downstairs in the living room. A small pole light in the room was lit at the time. While she was sleeping on her stomach, a man jumped on her and put a knife to

her back. She turned around about 60 degrees, saw defendant and asked him not to hurt her. He put the knife to her throat and said she would never see her children again if she said another word. He then put a towel over her face and that was the last time she saw his face that night. He then pulled her to the floor, tore off her clothes, raped her, and pulled her by the hair to a bathroom and threw her down. When the front door slammed she pulled the towel from her face and screamed. Her guests came down and called the police. When they arrived she told them she had been raped. She did not remember telling them the person lived across the street. The police took her to the hospital where a policewoman spoke to her; complainant did not remember whether she told her that she knew the rapist and that he lived across the street. She was driven home by two policemen and two policewomen; she was still upset and they did not talk to her about the rape.

Complainant identified defendant as her assailant and further testified. She had seen him 30 or 40 times over a two-year period, coming out of a yellow brick house on the corner of her block. At midnight, prior to the rape incident, defendant had knocked on her door and she spoke to him through a window. He said somebody was snooping around her car; she told him it was none of his business, and closed the window. On September 26, 1974, after the incident, she saw defendant playing ball near her home as she drove up in her car. He walked up to the car and said she would be a dead woman if she called the police. She then parked the car, ran to the house and telephoned Officer Peck, and while talking with him she saw a squad car passing by. She called out to the officer and told him what had happened and pointed out the defendant who was then arrested.

Officer Bruce Peck testified for the State. He saw complainant at the hospital at about 3 a.m. She was shaking and started to cry when questioned. He again saw her at about 5 a.m., when she was taken to view a line-up at the police station where defendant did not appear. Complainant stated that the person was not in the line-up. She did not say that he lived across the street from her. He again saw her at her home at 7 a.m., at which time she appeared more calm and directed him to the multiple-family apartment building where defendant lived. He made no attempt to locate anyone there.

Officer Ronald Tillrock testified that on September 26, 1974, he was driving the squad car past complainant's home and he observed her talking on the telephone. When she saw him she flagged him down and he stopped and had a conversation with her, then arrested defendant who was walking past the house.

Officer Thomas Fortuna was called as a defense witness. He and Officer Browning responded to a call at complainant's home on

September 23, 1974, at about 1:30 a.m. Complainant told them she had been raped and that the offender was a male Negro five feet seven inches tall, weighing about 140 pounds, wearing a velour or felt jacket, and had an odor about him. Officer Fortuna believed he asked whether she had seen the man before, but could not recall whether she answered because she was hysterical at the time.

Defendant testified. On September 23, 1974, he was 17 years old and lived with his grandmother. He denied ever going into complainant's home, threatening her with a knife, or having intercourse with her. On the evening in question he went to bed at 10 o'clock and slept until noon the next day. On September 26, 1974, when he and some friends were on a sidewalk, complainant tried to run him down with her car. He and his friends played baseball for 20 minutes until his grandmother came out. Complainant then ran out of her house shouting, and the police arrested him. He had not previously told the police or anyone other than his grandmother and his counsel of the attempt to injure him.

The trial court found defendant guilty of rape. During sentencing, after the State's Attorney said he had no sentence recommendation, the trial judge stated that by law he had to give defendant the minimum sentence of four years. However, when defense counsel suggested a total sentence of four years to four years and one day, the court stated that the Illinois Supreme Court would not allow such a sentence. Defendant was sentenced to a term of four to six years with a recommendation that he serve the term at the Vienna Correction Facility. The trial judge stated that if defendant tried to rehabilitate himself he would be eligible for release in a short time, but that this was a serious crime.

On appeal, defendant first contends that he was not proved guilty beyond a reasonable doubt. He argues that by complainant's own testimony she had only a fleeting opportunity to view her assailant, and that since she knew defendant lived nearby and had seen him 30 or 40 times in the neighborhood, her failure to accuse him until after she had had numerous contacts with the police over a period of six hours raises a reasonable doubt of his guilt.

The testimony of one witness alone is sufficient to convict even where the evidence may be conflicting and the witness' testimony is contradicted by the accused; conflict in the testimony applies solely to the weight of the evidence and the credibility of the witness, and these are matters left to the determination of the trier of fact. (*People v. Ingersoll* (1965), 58 Ill. App. 2d 216, 208 N.E.2d 79.) However, a conviction cannot stand if the identification testimony is vague, doubtful and uncertain (*People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444), especially if the identification testimony reveals a failure to assert or mention some physical feature of the defendant. (See *People v. Gardner* (1966), 35 Ill.

2d 564, 221 N.E.2d 232.) Failure to assert a fact when it would have been natural to assert it amounts in effect to an assertion of the nonexistence of that fact. *People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258; *People v. Hughes* (1974), 17 Ill. App. 3d 404, 308 N.E.2d 137; see *People v. Roe* (1965), 63 Ill. App. 2d 452, 211 N.E.2d 552.

In the instant case, defendant argues that it was natural for the complaining witness to assert immediately after the incident, at one of her interviews with the police prior to the 7 a.m. interview, that it was defendant who raped her. According to the police officers with whom she had contact prior to the 7 a.m. interview, she did not do this, although immediately after the incident she was able to furnish police with considerable information pertaining to defendant's physical characteristics. Therefore, defendant asserts, the identification by complainant is doubtful and uncertain. Moreover, he points out that complainant showed "major hesitation and arguable evasiveness" for the first time when she was asked in her testimony if she told the police at the hospital that the man who raped her lived in defendant's building. She responded, "Wait a minute" when she was first asked this question, and her subsequent response to such question was "I don't remember."

■■ After reviewing the entire record we conclude that defendant was proved guilty beyond a reasonable doubt. All the testimony, including that of the two police officers who interviewed complainant just after the incident, shows that she was "hysterical" at the hospital. Thereafter, at trial her memory as to what someone said to her at the hospital goes only to her credibility as a witness and the weight to be accorded her testimony. These are matters to be resolved by the trier of fact.

Moreover, the facts surrounding the identification of the defendants in the cases on which defendant here relies for his contention that the identification by complainant is doubtful and uncertain, clearly distinguish those cases from the one before us. In *People v. King*, it was stated that although it would have been natural for the prosecuting witness to have initially asserted that she had seen defendant a couple of times before the rape, what more significantly affected her credibility was the fact that she failed to tell anyone that she had seen him on three different occasions between the day of the rape and the day she identified defendant which was about six months later. In *People v. Hughes*, the witness was found to lack credibility on several grounds, including the fact that she had known the defendant prior to the incident but failed to identify him as her assailant at two line-ups, although she finally identified him two weeks after the incident. In *People v. Roe*, the victim of an armed robbery who had known defendant first failed to give any description of his assailants two days after the robbery, then named one of the participants but did not name defendant, and finally identified

defendant 16 days later at a line-up. In the case before us, complainant, who was described as "hysterical" by police officers attempting to interview her immediately after the rape, identified defendant as her assailant within six hours of the incident. We find that under these circumstances the identification is not so doubtful or uncertain as to raise a reasonable doubt of defendant's guilt.

■■ Finally, defendant contends that since the trial court wanted to impose the minimum sentence his maximum sentence should be reduced from six years to four years and one day. The offense of rape is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 38, par. 11—1(c)) for which the indeterminate sentence provided is a maximum term in excess of four years and a minimum term of four years unless the court sets a higher term (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1). In the instant case defendant was sentenced to not less than four nor more than six years. A review of the record shows that the trial judge sought to impose the least possible minimum sentence because of defendant's youth and the absence of any prior record. However, the trial judge properly provided a real differential of two years between the minimum and maximum imposed rather than a nominal spread of one day. The latter would in reality be a determinate sentence and might frustrate the statutory purpose of an indeterminate sentence which is to encourage defendant's rehabilitation "by holding out the possibility of early release on parole" (*People v. Harper* (1972), 50 Ill. 2d 296, 301, 278 N.E.2d 771; *People v. Viser* (1975), 62 Ill. 2d 568, 586, 343 N.E.2d 903). The sentence will not be disturbed.

For the foregoing reasons the judgment of conviction and the sentence imposed by the circuit court of Cook County are affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.