THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MORRIS BELL, a/k/a Benny Weathers, Defendant-Appellant.

First District (3rd Division)    No. 62324

Opinion filed November 18, 1976.

James Geis and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Iris E. Sholder and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Morris Bell (also known as Benny L. Weathers), was indicted for the offenses of armed robbery, aggravated battery, and attempted murder. Following a jury trial, he was found guilty of armed robbery and aggravated battery. A mistrial was declared as to the attempted murder charge after the jury was unable to reach a verdict. The trial court ruled that the aggravated battery merged into the armed robbery. Defendant was sentenced to serve 10 to 30 years in the penitentiary for armed robbery.

Defendant raises two issues: (1) he was not proved guilty beyond a reasonable doubt, and (2) the trial court abused its discretion and denied defendant a fair trial in answering a question propounded by the jury during deliberations by reading the relevant portion of the trial transcript to them. We affirm. Four witnesses testified. The pertinent testimony follows.

Nelson Johnson testified for the State. On October 2, 1973, he and his wife, Dacy Mae Johnson, owned a small grocery store at 1359 South Keeler Avenue in Chicago. At approximately 8 p.m. defendant entered the store; he walked past Nelson Johnson who was at the front of the store and went toward the meat counter in the back, about 30 feet away. Mrs. Johnson, the butcher, Cecil Walker, and a friend, Johnnie Berry, were at the meat counter. While defendant was buying some meat a second man came in with a shotgun and announced a robbery. The second man then told defendant to "stick them up in the back," whereupon defendant put a pistol to the head of the butcher and took him and Berry to the front of the store, forced them to lie down and forced Mrs. Johnson to kneel in the middle of the store. He then demanded money from Mr. Johnson who replied that all he had was in the cash register. Defendant refused to believe him and told his accomplice to shoot Mrs. Johnson. Mr. Johnson then gave defendant an additional $200 he had secreted in a bag in his sock. Defendant then demanded Mr. Johnson's gun, and when told that he had none he tried to frisk Mr. Johnson, then pistol-whipped him across the head. He again demanded Mr. Johnson's gun and after striking him, fired a shot at him. The bullet pierced Mr. Johnson's clothing but did not strike his person. The accomplice with the shotgun informed defendant that a woman outside the store was screaming, and both offenders left. The police arrived and took Mr. Johnson to the hospital where he received stitches and medication. Later, Investigator Robert Cozzi showed him 25 or 30 photographs which he examined while alone and picked out defendant's picture as the person who beat him.

On cross-examination Mr. Johnson testified that Walker, Berry and Mrs. Johnson were at the meat counter when defendant entered. He recalled speaking briefly with the police before going to the hospital but could not

remember what he said, or if he described the offenders. Several days later some detectives came to the store and spoke with him but again he could not recall giving a description of the offenders. He had seen the man he later identified as defendant in the neighborhood two or three times prior to the robbery. However, he did not know his name at that time and could not recall whether he told police that he had seen him before, nor did he recall whether defendant had ever previously been in his store. On November 29, 1973, Mr. Johnson called the police department and gave Investigator Cozzi the name of Benny Weathers. When Investigator Cozzi later arrived with a group of photographs Mr. Johnson picked defendant's picture as that of his assailant.

Dacy Mae Johnson also testified for the State. On October 2, 1973, at approximately 8 p.m., a young man entered their grocery store and went to the meat counter in the rear. She identified defendant as that man. While Walker, the butcher, was slicing meat for him defendant came around the counter and put a pistol to Mr. Walker's head. He then forced him and another man to lie on the floor near the front of the store. Defendant returned to the meat counter, removed some items from Mrs. Johnson's pocket and asked her for money. When she told him she had no money he made her lie on the floor, then went to the front and asked Mr. Johnson for money. Defendant took the money from the cash register and asked Mr. Johnson for his gun. Mrs. Johnson saw him strike her husband over the head two or three times with his gun. When defendant asked for more money Mrs. Johnson told her husband to give him all of it, and he did, taking the remainder out of his sock. After defendant hit Mr. Johnson a shot was fired which went through Mr. Johnson's clothing. A woman outside the store started to scream and the offenders fled.

Cross-examination of Mrs. Johnson elicited the following testimony. Berry did not enter the store until the robbery was in progress. Before defendant made Mrs. Johnson lie down he brought her out from behind the counter to the end of a grocery shelf. When the police arrived she talked with them but did not recall giving them a description of the offenders. She remembered giving a description while at the hospital with her husband. She could not recall details of her description of the man with the handgun, other than that he was a male Negro, had a "natural" hair style and was wearing dark clothes. She did not remember mentioning the weight of the man later identified as defendant.

On redirect examination Mrs. Johnson testified that on November 29, 1973, Investigator Cozzi came to the store with some pictures. She viewed them separately from her husband and identified defendant's picture as the offender with the handgun. On re-cross-examination she was unable to establish how many pictures Investigator Cozzi showed her except that it "really was substantial." She saw "a couple" or "a few" pictures of

defendant, not just one. Finally, further examination established that the pictures she saw had both a front and profile view of each individual; the multiple photographs of defendant were on separate pieces of paper.

Investigator Cozzi was the third witness called by the State. On November 29, 1973, he talked with Mr. Johnson. Pursuant to the conversation he obtained a photograph of a man named Benny Weathers and placed it in a group of approximately 20 photographs of other individuals, then went to the store where the Johnsons separately viewed the photographs. Each identified defendant as the offender who beat Mr. Johnson. Each picture had both a front and side view of an individual. On cross-examination Investigator Cozzi testified that the group contained only one photograph of defendant with the two views; there were not two or three separate photographs of defendant.

Officer Ronald Langbauer was called on behalf of defendant. On October 2, 1973, he and his partner responded to a "robbery in progress" call at the Johnsons' store at about 8:15 p.m. He spoke with Mr. and Mrs. Johnson, Mr. Walker and Mr. Bailey [sic] as a group. He obtained from the Johnsons a description of the man with the handgun as dark complexioned, weighing approximately 160 pounds, and wearing a black waist-length jacket. Neither of them described his hair style. Mr. Johnson did not tell Officer Langbauer that he had previously seen defendant in the neighborhood but described his assailant as an unknown male Negro.

On cross-examination Officer Langbauer testified that he talked with Mr. Johnson for about two minutes and with the entire group for about three minutes. During the interviews Mr. Johnson was bleeding and was "not alert" in responding to questions. The purpose of the interviews was to obtain a description for a "flash message" to other police cars in the area.

During deliberations the jury sent a note to the judge inquiring in part "When Mr. Johnson called police did he give them the name of Benny Weathers?" Over defense counsel's objection the court reconvened the jury and read the following testimony in answer to their question.

"The question is being put to Mr. Johnson and it reads as follows:
'Now in November, late November of 1973 did you call Investigator Cozzi?
'Answer: I did.
'Question: And when you called you were trying to reach Investigator McHugh, is that correct, the original investigator on this case?
'Answer: I did.
'Question: And he was not in the, at the time that you called, is that right?
'Answer: No, Cozzi told me he had the case.

'Question: He told you he had taken the case and at that time you gave the police the name of Bennie Weathers, is that right?

'Answer: I did.'"

The jury subsequently returned verdicts finding defendant guilty of armed robbery and aggravated battery.

■■ Defendant first challenges the identification testimony of the complaining witnesses as insufficient to establish his guilt beyond a reasonable doubt. It has repeatedly been held in Illinois that the testimony of even a single witness, if positive and credible, is sufficient to sustain a conviction. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Therefore, defendant raises numerous factors attacking the credibility and weight of the testimony of Mr. and Mrs. Johnson.

It is axiomatic that the weight and credibility to be afforded a witness' testimony is a determination for the jury as the trier of fact, and unless that determination is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt, the verdict will not be disturbed on appeal. *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Dillon* (1975), 28 Ill. App. 3d 11, 327 N.E.2d 225; *People v. Oparka* (1967), 85 Ill. App. 2d 33, 228 N.E.2d 291.

Initially, we turn to defendant's contention that the Johnsons had insufficient opportunity during the incident to observe the offender and make a positive identification. We find no adequate support in the record for such a contention. The entire incident lasted about 10 or 15 minutes, and at various times the offender was directly facing, talking with and touching both witnesses. While it is true that at times their attention may have wandered to other people in the store, there can be little doubt that while the robber was directly dealing with each witness they had more than ample opportunity to observe him at close quarters. (See *People v. Ervine* (1965), 64 Ill. App. 2d 82, 212 N.E.2d 346.) Defendant points out that no testimony was adduced at trial concerning the lighting conditions in the store that evening. However, there is nothing in the record to indicate that while it may have been dark outside, the lighting inside the store was insufficient for accurate observation.

■■ Defendant next contends that Mr. Johnson's failure to tell police that he had seen the offender prior to the incident casts serious doubt on his testimony. It is true that the failure to assert a fact when it would be natural to do so may amount in effect to an assertion of the nonexistence of that fact. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876; *People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258.) Defendant therefore claims that Mr. Johnson's failure to inform police that he had seen him means that in fact he had never seen him on any prior occasion. This allegedly casts doubt on Mr. Johnson's identification of defendant.

We do not agree. In this case it is not evident that it would have been natural for Mr. Johnson to inform Officer Langbauer of his prior sightings of defendant. Mr. Johnson was bleeding and dazed; he was "not alert" in answering the officer's questions; Officer Langbauer spoke with him in a group of people for only about two minutes, and there is no evidence that he inquired whether Mr. Johnson had ever seen his assailant previously. In addition, while Mr. Johnson had seen defendant before the robbery he testified that he did not know his name at that time. Under such a circumstance it is not apparent that providing such information would have been natural or even helpful to the police. As this court stated in *People v. Haynes* (1970), 131 Ill. App. 2d 319, 324, 266 N.E.2d 681, 684:

> "The fact that the complainant did not mention to the police that she had seen the defendant before March 3, 1968, in the circumstances of this case, does not discredit her identification. She had encountered the defendant only briefly, and the meetings occurred months before the crime. She did not know the defendant's name or his address. This situation should be carefully distinguished from *People v. Roe* (1965), 63 Ill. App. 2d 452, 211 N.E.2d 552 where the complaining witness knew the name of his assailant and failed to reveal his name until 16 days after the police questioned him."

Thus, we cannot infer that Mr. Johnson's failure to convey such information to the police amounted to an assertion that he had not seen defendant prior to the incident. Neither does the added fact that he apparently did not give this information to the detectives who later came to his store give rise to such an inference. First, there was no testimony by any of these detectives at trial. The only testimony related was by Mr. Johnson who could not recall giving them such information. Further, Mr. Johnson apparently still did not know defendant's name, and there was no evidence as to what inquiries were made by the detectives. Finally, even if it were possible to infer from these facts that Mr. Johnson had never seen his assailant prior to the robbery, in our view it does not so substantially affect his subsequent identification of defendant's photograph as to render it unbelievable or unsatisfactory. Mr. Johnson had sufficient opportunity to observe the offender during the robbery, and the identification would be credible on that basis alone.

■■ Defendant attacks the photographic identification made by both witnesses to Investigator Cozzi on November 29, 1973. It is defendant's contention that the time lapse of 58 days renders the identification unreliable. A time lapse between the commission of a crime and the later identification of a defendant is a factor which only affects the weight to be given the identification and does not make it unworthy of belief per se. (*People v. Rodgers* (1972), 53 Ill. 2d 207, 290 N.E.2d 251; *People v. Coli*

(1954), 2 Ill. 2d 186, 117 N.E.2d 777.) Identifications where much more than 58 days elapsed have been upheld. (*People v. Rodgers; People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685, *cert. denied*, 403 U.S. 921 (1971).) In a case such as this, where the witnesses had ample opportunity to view the assailant and their photographic identification was clear, unwavering and later reaffirmed at trial, we cannot say the time factor renders their identification unreliable. See *People v. Hanisch* (1935), 361 Ill. 465, 198 N.E. 220; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.

However, defendant contends that the trial testimony of Mr. and Mrs. Johnson proves that their memories were adversely affected by the passage of time; they could not recall what they said to police that evening; Mr. Johnson could not recall giving a description of his assailant at all, and Mrs. Johnson could only recall giving a description at the hospital. While she claimed to have described defendant's hair style and denied giving a weight estimate, Officer Langbauer contradicted her on these points. Indeed, he testified that he obtained descriptions from the witnesses while at the scene of the crime. These factors are not persuasive. It is not unusual to identify a photograph of an assailant 58 days after an incident, yet be unable to recall the details of a 3-minute group conversation with a police officer at a trial almost 1½ years later, especially considering that Officer Langbauer had to employ his police report to refresh his own memory of the incident.

Finally, defendant points to other apparent failures of memory by Mr. and Mrs. Johnson during the trial; namely, that Mr. Johnson could not recall the names of the investigating officers, whether he told police he saw defendant earlier, how many times or when he had seen him, or whether defendant had ever previously been in his store; and again, that Mrs. Johnson could not recall the dates she spoke with investigating officers, how many she talked to, and whether she saw more than one photograph of defendant in the group presented by Investigator Cozzi. These factors do go to the credibility to be given the identification testimony of Mr. and Mrs. Johnson. However, they are not such as to make the photographic identification incredible nor to hold unjustified the jury's determination that identification had been established. Furthermore, both witnesses reaffirmed their previous identification of defendant at trial.

■■ Defendant attacks the subsequent identification of him in court by the Johnsons as occurring under "suggestive circumstances" in that both witnesses saw him escorted into the courtroom alone when the case was called. However, it is evident that the witnesses were not unduly influenced by such a circumstance. They had observed him during the robbery and identified his photograph earlier. Thus, their in-court

identification of him had an origin independent of any "suggestive circumstances" surrounding his entrance into court. (*Cf. United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) The Illinois Supreme Court faced a comparable situation in *People v. Black* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, *cert. denied,* 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155 (1973), *rehearing denied,* 412 U.S. 963, 37 L. Ed. 2d 1012, 93 S. Ct. 3015, where it was claimed that the viewing of defendants in the court building rendered the identification testimony of witnesses inadmissible. The court responded:

> "These eyewitnesses had all seen the defendants before. In addition to seeing them at the food store, they had viewed their pictures and had seen them in the lineup. Seeing them under these circumstances in the court or the corridor cannot be said to be so suggestive as to influence the witness's testimony. Any association of the defendants with the crime had clearly been fixed in the witnesses' minds prior to the incidents complained of." (52 Ill. 2d 544, 552-53, 288 N.E.2d 376, 382.)

Finally, defendant contends that doubt is cast upon the reliability of the witnesses' testimony because of the "inconsistencies and contradictions therein." Defendant points out the following inconsistencies: (1) Mr. Johnson stated that John Berry was in the store when the incident began, while Mrs. Johnson testified that he came in after the robbery was in progress; (2) Mr. Johnson testified that defendant made his wife kneel down, while she testified that she was forced to lie on the floor; (3) Mr. Johnson claimed that defendant struck him after asking for his gun, while Mrs. Johnson testified he was struck while more money was being demanded. As to this last asserted contradiction, our reading of the record indicates that Mrs. Johnson corroborated her husband's testimony that he was struck after being asked for his gun. The only conflict arises as to whether Mr. Johnson gave defendant the $200 from his sock before or after being struck. In addition, defendant again points out the previously mentioned contradictions between the Johnsons' testimony of what they told the police, and Officer Langbauer's testimony as to what descriptions they gave him that night. Defendant points out that Mrs. Johnson claimed to have seen more than one separate photograph of him in the group shown her by Investigator Cozzi, while the officer testified that there was only one picture of defendant in the group.

In dealing with these points we first note that as a whole, the Johnsons' testimonies were corroborative; each testified consistently concerning the manner in which the incident took place and the general sequence and nature of the events. While there are some inconsistencies, these must be viewed as minor in nature. Minor discrepancies in the testimony of a

witness do not necessarily render invalid an identification by that witness, but rather go to the weight to be afforded such testimony by the trier of fact. *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Bergeron* (1973), 10 Ill. App. 3d 762, 295 N.E.2d 228.

■■ In *People v. Lonzo* (197), 20 Ill. App. 3d 721, 315 N.E.2d 256, this court reversed a robbery conviction partially because of damaging discrepancies in witnesses' testimony. In this case, however, most of the discrepancies of which defendant complains concerned observations made *after* the robbery had commenced and a stress situation had developed. The witnesses' testimony concerning their own and defendant's actions *before* the robbery was entirely consistent. As to the discrepancy between the testimony of Mrs. Johnson and Investigator Cozzi concerning the number of photographs she was shown of defendant, we need simply point out that she reaffirmed her identification of defendant at trial and that both Investigator Cozzi and Mr. Johnson confirmed her previous photographic identification of defendant. The discrepancies are minor and not sufficient even in totality to raise a reasonable doubt as to defendant's guilt.

■■ The second issue raised by defendant on appeal is that the trial court abused its discretion in answering a question propounded by the jury during its deliberations. In its note to the trial judge the jury inquired whether Mr. Johnson when he called had given police the name Benny Weathers; the court read the relevant testimony to the jury in answer to its question. Defendant claims that such a review of the testimony was an abuse of discretion in that such evidence was not pertinent to the issue before the jury of whether defendant had been sufficiently identified as one of the robbers, and it prejudiced defendant by unduly emphasizing the point that he apparently used an alias.

Illinois has adopted the position that it is within the discretion of the court to allow or refuse a jury's request for the review of testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) Where trial courts have refused such requests under the mistaken belief that they have no discretion in the matter, such refusals have been held error. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) As evidenced by its actions and by the record before us it is clear that the trial court in this case was well aware of its discretionary power in this regard. Therefore, the issue presented is whether the court abused its discretion in allowing the review of testimony.

The existence of the discretionary power imposes a duty on the trial court to determine whether a review of the requested testimony would be helpful or harmful to the jury's proper deliberations. (*People v. Anthony* (1975), 30 Ill. App. 3d 464, 334 N.E.2d 208; *People v. Jackson* (1975), 26

Ill. App. 3d 618, 325 N.E.2d 450.) Obviously, when a jury posits a question to the court the jury feels that the answer would aid in its deliberations. Thus, in exercising its discretion to review testimony in answering such questions, the trial court, at the very least, must start with the assumption that the *jury* feels it would be helpful. The court must then determine if there is a possible basis for the jury's belief. In the instant case the certain knowledge that Mr. Johnson provided the name Benny Weathers to the police could aid the jury to determine the credibility and weight to be given the identification testimony of Mr. Johnson. The fact that defendant's picture was subsequently obtained by Investigator Cozzi under the name of Benny Weathers, and that Mr. Johnson then identified the picture as that of the offender could thereby aid the jury.

The trial court must also determine what harm the proposed review of testimony might do to the jury's deliberations. If it is significant or outweighs the good of such a review then the trial court should exercise its discretion and refuse the requested review. In the instant case, defendant argues that the following harm resulted. He first contends that the testimony reviewed constituted unreliable hearsay that one of the offenders was named Benny Weathers, since we do not know how Mr. Johnson obtained the information. Whether it can be characterized as hearsay is irrelevant to our decision. The testimony was admitted into evidence without objection and was elicited by defense counsel from Mr. Johnson. It is not the admissibility of the evidence which is in issue. Rather, the sole issue is whether the review of such testimony would be helpful or harmful to the jury's deliberations. We have already concluded that such information could aid the jury in its deliberations.

Defendant further contends that reviewing this testimony unduly emphasized that he used an alias, and argues that it stigmatized him in the minds of the jurors as a "dubious character," thus distorting the perspective of the jury's deliberations. He cites *People v. Dukes* (1957), 12 Ill. 2d 334, 146 N.E.2d 14, which is factually inapposite. There, the prosecutor made repeated references to defendant's alleged alias, over defense counsel's objections, and implied to the jury during his closing argument, without having adduced any evidence, that placement of the alias on the indictment was not by mere chance but indicated that defendant's character was of a dubious nature. In the instant case no comments were made in the testimony concerning the alias, and the only information reviewed was Mr. Johnson's testimony that he gave the name Benny Weathers to the police. There is no indication in the record that the alleged alias reflected on defendant's character. (*Cf. People v. James* (1972), 4 Ill. App. 3d 1042, 282 N.E.2d 760.) Under these circumstances, the review of testimony did not mislead the jury or distort its deliberations. Furthermore, defendant's contention that reading of the

testimony focused the jury's attention on the fact that he was also known by another name would be incorrect. The question asked clearly indicated that the jury had already considered that defendant had been identified under an alias, and it was then only interested in *who* supplied the police with this information. The trial court's decision will not be disturbed unless there has been an abuse of discretion. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) We conclude that the trial court did not abuse its discretion in reviewing the testimony for the jury.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.