THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HENRY McCLELLAN, Defendant-Appellant.

First District (2nd Division)   No. 77-1960

Opinion filed May 1, 1979.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant
Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial, defendant, Henry McClellan, was convicted of unlawful delivery of a controlled substance, heroin. He was sentenced to a term of five to 15 years in the penitentiary, to run consecutively to a sentence received on a previous unrelated offense. On appeal, defendant contends: (1) that the delay of eight months between the alleged unlawful delivery and the return of the indictment against him operated to deprive him of due process; and (2) that the trial court abused its discretion when it granted the jury's request and permitted the court reporter to read the complete testimony of one of the State's witnesses to the jury after the jury had indicated that it was deadlocked.

On September 27, 1976, defendant was indicted for unlawful delivery of a controlled substance, heroin. The occurrence allegedly took place on January 21, 1976. Prior to trial, defendant moved to dismiss the indictment on the ground that the preindictment delay denied him due process.

The trial court conducted a hearing on the motion, at which defendant testified that he could not recall the events of the day of the alleged offense. All he could remember was that he was living in a hotel at 6215 South University, Chicago, Illinois, and that he was receiving general assistance. He stated that he seldom went out, and that he did not believe that during the winter he was ever in the vicinity of the parking lot where the offense allegedly occurred, at 35th and Giles in Chicago. He did not learn of the indictment until October 14 or 15, 1976, while imprisoned in the penitentiary. He stated that he was not able to call any friends with respect to preparation of a defense.

Carlton Williams, an investigator for the public defender's office, testified on behalf of defendant. He stated that he went to the A & P grocery store at 35th and Giles and spoke to the store manager, but he was not the manager on the day of the alleged offense. Williams testified that he tried to question several people on the street and in the store parking lot, but no one would talk to him. He stated that he was unable to find out anything about the events that occurred in the parking lot on January 21, 1976.

Taylor Robinson, the manager of the store at 35th and Giles, testified that he knew nothing of the events in question as he was not the store manager at the time. This completed the testimony at the hearing, whereupon the trial court denied the motion to dismiss.

At defendant's jury trial, Armeatha Poole testified that on January 21,

1976, she was a Chicago police officer assigned to investigate narcotics sales in the Chicago schools. Her specific duty was to act as an undercover officer and to buy narcotics from dealers in the area.

On January 21, 1976, Officer Poole and her partner, Officer Margaret Phifer, parked their car in the A & P parking lot at 35th and Giles in Chicago. Officer Poole left her car and approached a car parked near the building and occupied by four men. She went to the passenger side of the car and had a conversation with an individual identified by her as defendant. Officer Poole asked the individual if he had seen another person from whom she had previously purchased narcotics. When he said that he had not, Officer Poole told him that she wanted to buy an "eighth," a specific amount of narcotics. When the individual identified as defendant said that he "could handle it," Officer Poole gave him $30; he handed the money to the driver of the car, who in turn gave him a sealed envelope which he gave to Officer Poole. Officer Poole took the envelope to her car and drove to Youth Headquarters where she inventoried the envelope and placed it in another envelope which she signed, sealed, and gave to Officer Stubblefield.

On cross-examination, Officer Poole stated that she began her undercover assignment in July of 1975 and was still working that assignment at the time of trial, in January of 1977. She testified that during that period she made approximately 150-175 purchases of narcotics, which she recalls with the help of reports. Although she made numerous purchases in the area of 35th and Giles, only one was made in that parking lot. She described the car that the four men occupied as a blue Chevrolet, but she was uncertain as to the particular year or model. She testified that on the day in question she had a backup team consisting of two other police cars in a position to see the parking lot. Officers Paul Stubblefield and Magnus Burney were in one of these cars during the parking lot purchase.

Officer Burney testified that on January 21, 1976, his assignment was the detection of drug traffic in the Chicago schools. On that day, Officer Stubblefield and he observed a purchase of narcotics by Officer Poole in a parking lot at 35th and Giles. He watched Officer Poole go up to a car which he described as a "white over blue" Chevrolet that he believed to be a Monte Carlo. He saw Officer Poole engage in a conversation with the four men in the car, and then return to the unmarked car in which Officer Phifer was sitting. Officer Burney then received a radio message and instructed Officers Willand and McCall, who were parked a block away, to stop the car containing the four men. Officer Burney followed the blue and white Chevrolet and observed that no one got in or out of the car up to the time it was stopped at 40th and King Drive by Officers Willand and McCall, who then approached the car and conversed with the occupants.

On cross-examination, Officer Burney testified that he has been engaged in this type of work since October of 1974 and has witnessed approximately 250-300 buys, 30 or 40 of which took place in the vicinity of 35th and Giles. Although another buy may have taken place in that location on the same day, he remembered this purchase after reading over his report. The report did not state that he watched the sale, but he specifically remembered watching it. He did not hear anything that Officer Poole or the men in the car said. He testified that he never had a clear view of the occupants of the car as he remained about a half block away during the incident.

On redirect examination, Officer Burney testified that under the heading "assisting officers," his report contained his own name and the names of Officer Stubblefield, his partner in the car that day, and Officers Willand and McCall, the officers who made the stop. On recross, he testified that under the heading "person wanted," his report contained the names of defendant and another man. He stated that although the car was stopped five blocks away from the scene of the purchase, the individuals were not arrested until months later. He also stated that the first time he testified with regard to the alleged events of January 21, 1976, was on September 16, 1976, before the grand jury.

Officer Frank McCall testified that on January 21, 1976, Officer Willand and he were working as a backup to an undercover police unit on 35th Street. He received instructions to stop a car pulling out of a parking lot on 25th and to ascertain the identity of two males in the front seat. He followed the car to 40th and King Drive and stopped the car, observing that no one got in or out. Officer McCall identified defendant as the man in the front seat on the passenger side. Officer McCall asked the man for identification; the man produced identification bearing defendant's name and picture and gave as his address 6215 South University, defendant's address. Officer McCall testified that the man in the front passenger seat was older than the other occupants. It was stipulated that defendant was 50 years old at the time.

Elizabeth Olson, a chemist for the Chicago Police Department, testified that on January 22, 1976, her supervisor gave her a sealed envelope bearing the name of Officer Poole. She conducted a series of tests which revealed that the substance contained in the envelope was heroin. The parties stipulated to the chain of custody of the envelope. The State then rested, whereupon the defense rested without offering any evidence.

After deliberating for some time, the jury sent a note to the trial court, requesting a copy of Officer Burney's testimony. The court replied in writing that no additional testimony would be made available.

After additional deliberations, the jury was brought out by the court

for the purpose of asking whether the jurors felt they could reach a verdict. The foreman of the jury stated that most of the jurors had a question as to the testimony of Officer Burney, that they were confused as to what his testimony was, and that they did not feel there was a reasonable probability that they could reach a verdict. The court stated that even if the court, in its discretion, undertook to have Officer Burney's testimony read back to the jury, it was not possible at the time due to the absence of the court reporter who took the testimony. The court then asked each juror whether there was a reasonable probability of reaching a verdict; each replied that there was not.

The court and the parties' attorneys then discussed the issue outside the presence of the jury. Defense counsel suggested that the jury be instructed to rely on their collective memories, while the State requested that the testimony be provided. Although defense counsel disagreed, the court proposed to ask the jury if they could reach a verdict if they heard Officer Burney's testimony. The jury was again polled and each replied that a verdict would be probable if the testimony was provided. The jury was then sequestered for the night. On the following morning, a court reporter read Officer Burney's entire testimony to the jury. A short time later the jury returned a verdict of guilty; the jury was then polled.

Defendant first maintains that he was prejudiced and therefore denied due process by the eight month delay between the alleged offense and his indictment, due to his inability to recall the events of the day in question and his resulting inability to aid in his defense. Defendant asserts that the delay was especially prejudicial because when he finally learned of the charges against him, he was imprisoned in the penitentiary and was unable to call any friends to help him prepare his defense. He further argues that prejudice is shown by the failure of the investigator from the public defender's office to discover anything about the alleged occurrence on January 21, 1976; defendant impliedly argues that had he been able to go to the scene himself, he would have been able to find out more.

■■■ For preindictment delay to constitute a denial of due process, the defendant must first come forward with a clear showing of actual *and* substantial prejudice. (*People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244.) Only when actual and substantial prejudice has been demonstrated does the burden shift to the State to show the reasonableness of the delay. (*People v. Lawson* (1977), 67 Ill. 2d 449, 459-61, 367 N.E.2d 1244; see *United States v. Lovasco* (1977), 431 U.S. 783, 790, 52 L. Ed. 2d 752, 97 S. Ct. 2044.) If both actual and substantial prejudice and reasonableness are made out, the court must make a determination on the due process issue by balancing the competing interests at stake. See *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 461, 367 N.E.2d 1244.

Here, defendant's allegation of prejudice is grounded on his faded memory and his inability to locate potential defense witnesses. The mere assertion of an inability to recall and resulting inability to aid in preparation of a defense is insufficient to establish actual and substantial prejudice. (*People v. Lawson; People v. Chicon* (1977), 55 Ill. App. 3d 100, 104, 370 N.E.2d 605; *People v. Dunn* (1977), 49 Ill. App. 3d 1002, 1006-08, 365 N.E.2d 164.) Thus, in *People v. Dunn,* the alleged unlawful delivery of a controlled substance occurred on February 19, 1974, and charges were not filed until November 7, 1974. The court held that the defendant's mere inability to recall and his resulting inability to aid his attorney in establishing an alibi defense were insufficient. Similarly, in *People v. Chicon,* the alleged unlawful delivery took place on May 22, 1975, the indictment was filed on October 8, 1975, and the defendant was notified of the indictment on December 8, 1975, while he was incarcerated. The court stated that his mere inability to recall was insufficient, and, noting that there was no evidence that the supposed witness would have aided his defense, the court held that no actual and substantial prejudice had been demonstrated. In the instant case, defendant has not even indicated that he has an actual witness in mind, let alone shown that that witness, but for the delay, would have aided him in his defense. At most, defendant has been able to demonstrate only the possibility of prejudice, and that is not enough. *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244.

■ Defendant also argues that the State introduced no evidence to show the reasonableness of the preindictment delay. But because no actual and substantial prejudice was shown an inquiry into the reasonableness of the delay was not and is not required. (*People v. Lawson* (1977), 67 Ill. 2d 449, 459-61, 367 N.E.2d 1244.) Therefore, the trial court did not err in denying defendant's motion to dismiss.

Defendant next contends that the trial court erred in permitting the court reporter to read Officer Burney's testimony to the jury at the jury's request after the jury had indicated that it was deadlocked. The law is well settled that it is within the discretion of the court whether to allow or refuse a jury's request for a review of testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 364, 308 N.E.2d 577.) In fact, where trial courts have refused such requests under the mistaken belief that they have no discretion in the matter, such refusals have been held error. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) In the case at bar, the trial court was well aware of its discretionary power, and therefore the issue is whether the court abused its discretion in allowing a review of certain testimony. *People v. Pierce.*

■ ■ In the exercise of its discretion, the trial court is charged with determining whether a review of the testimony requested would be

helpful or harmful to the jury's proper deliberations. (*People v. Pierce; People v. Bell* (1976), 44 Ill. App. 3d 185, 193, 357 N.E.2d 1256.) Surely a plausible starting point for this inquiry is whether the *jury* feels it would be helpful (*People v. Bell* (1976), 44 Ill. App. 3d 185, 194, 357 N.E.2d 1256), and whether there is a possible basis for the jury's belief. (*People v. Bell*; see *People v. Allen* (1977), 48 Ill. App. 3d 870, 873, 363 N.E.2d 616.) In the case at bar, the members of the jury unanimously felt that a review of Officer Burney's testimony would permit them to reach a verdict where a verdict was otherwise improbable. After hearing the testimony of several officers, the jury could reasonably have wished to recall the testimony of this particular officer, who formed the corroborating link between the defendant's alleged act and his apprehension. (See *People v. Allen*; see also *People v. Reynolds* (1978), 57 Ill. App. 3d 593, 373 N.E.2d 650.) Moreover, the court permitted, in accord with the jury's request, the entire testimony of the officer to be read, so that the jury could fairly compare all portions of his testimony. (See *People v. Allen.*) Thus, it is difficult to see how the review of the testimony could have been harmful to the jury's proper deliberations, nor does defendant point to any harm that might have resulted. Defendant only contends that because the jury had already indicated that it could not reach a verdict, the court should have declared a mistrial. However, defendant cites no authority for this proposition and the cases are to the contrary. (See, *e.g., People v. Reynolds.*) We cannot find that the trial court abused its discretion. Indeed, both court and jury appear to have performed their respective roles conscientiously and commendably.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

PERLIN and HARTMAN, JJ., concur.