THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH PALLARDY, Defendant-Appellant.

Second District    No. 79-767

Opinion filed February 25, 1981.

E. William Bedrava, of Berwyn, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a jury trial the defendant was convicted of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3)) and sentenced to three years periodic imprisonment. He appeals, contending that he was not proven guilty beyond a reasonable doubt and that trial errors prevented a fair trial.

We first conclude that the proof of guilt was sufficient beyond a reasonable doubt. Defendant, testifying in his own behalf, denied certain of the conduct related by the 10-year-old complaining witness and denied that any touching was with the requisite intention to arouse the sexual desires of either himself or the child. However, the testimony of the child

and the testimony of witnesses who corroborated various details of her story raised an issue of credibility.

It appears from the evidence that the incident in question occurred at the home of the defendant's former lady friend, Karen Balgeman, who had apparently terminated the relationship earlier in the week. Defendant testified he was telephoned by one of the children because she thought her mother was with him and that he drove over to the house. There, three of the four Balgeman children were present, Heather, age 10, Stephen, age 14, and Peter, age 16. In addition, a 19-year-old friend and the complainant, Patricia, age 10, were present at the residence. Patricia was a girl friend of Heather's and lived down the block from the Balgeman home. She had planned to sleep over on the night in question.

Patricia testified that when the defendant came in the house she and Heather were in their bathing suits and that he sat down at the table where they were. In the conversation she said that he related that he "read feet." She stated that defendant told her to put her heel on his knee so that the bottom of her foot was facing him and "he was, like, rubbing my toes and stuff"; that he said the "big toe said I was very immature and that the four littler toes said that I would like older kids, not the kids of my age." He then directed she and Heather to take a bath because they had been swimming in the pool. She and Heather were in the bathtub in the upstairs bathroom both facing the front of the tub. She said that the defendant was "swishing" the soap bubbles and "quickly" touched her "bottom" and left the room. She told Heather that she didn't have pajamas, and Heather suggested that she tell the defendant. The defendant offered her a slip of Heather's that was "about up to my hips." Instead, she decided she would wear a T-shirt and keep on her underpants. Patricia testified that she and Heather slept in separate single beds in Heather's room; and that defendant came into the room three times during the night. The first time he merely said "how mature I was and if he had a daughter, he would want it to be like me." Later he came back in the bedroom and stated that he did not get his good-night kiss and when she gave him a short kiss on the cheek he kissed her "longer" on the lips. He then stated "how pretty and mature I was and everything, and he left." Patricia then woke up Heather and told her she was getting nervous and scared because of defendant's actions. She testified that Heather seemed half asleep and responded that she should go back to bed.

Patricia further testified that defendant came in the bedroom on a third occasion, told her how pretty and mature she was, pulled the covers below her hips, lifted the top of the T shirt and began to kiss and fondle her chest and stomach. After defendant left the room Patricia woke up Heather, related the incident and was told to go back to bed. Patricia testified that she was scared and crying as a result of the defendant's

action, that she picked up her things and, after defendant placed his hands on her shoulder and asked her to wait, she went downstairs, out the front door and ran home.

Patricia's mother testified that when Patricia came home she was crying and otherwise gave the appearance of being very upset. Upon entering the home Patricia related the incident involving the defendant, corresponding to her testimony.

Heather testified that Patricia woke her up on two separate occasions and was crying both times, and that in each instance Heather simply told her to go back to bed. She testified that on the second occasion Patricia told her she wanted to go home but didn't say why. She related that on that occasion the defendant came into the room, placed his hands on Patricia's shoulders and told her that everything was going to be okay, but that Patricia then ran out of the room.

Defendant testified that when the girls went to bed he kissed them both good night. He kissed Heather on the cheek and Patty on her nose. Subsequently, he heard crying coming from the bedroom. He then went upstairs and asked if the girls were sleeping, at which time Patricia responded, "No." He said that Patricia was crying, that he attempted to comfort her by adjusting her bed covers and patting her on the shoulder. He related that Patricia then jumped out of the bed and ran out of the house crying.

■■ It is well established that where a conviction for indecent liberties with a child depends upon the testimony of the complaining witness, there must be substantial corroboration of such testimony or the testimony must otherwise be clear and convincing. (See, *e.g.*, *People v. Kolden* (1962), 25 Ill. 2d 327, 330; *People v. Voight* (1979), 72 Ill. App. 3d 472, 474.) It has been noted, however, that in an indecent liberties prosecution the testimony of the complaining witness "need not be crystal clear and perfect as far as memory is concerned" in order to be clear and convincing. *People v. Voight* (1979), 72 Ill. App. 3d 472, 475.

We conclude from our review of the child's testimony that it was clear and convincing. In addition, there was substantial corroboration. The testimony of Heather corroborated a number of the circumstances which were preliminary to the alleged indecent acts. The mother of the complaining witness corroborated her daughter's testimony by relating that her daughter was upset and crying when she came home and then detailed the defendant's conduct. We conclude that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt when it was accepted as credible by the jury. See *People v. Ulrich* (1952), 411 Ill. 316, 323.

Defendant also contends that he was not proved to have the requisite intent for commission of the offense. He also notes the fact that Heather

was only a few feet away from the complaining witness' bed at all times and several other children were present in the Balgeman home as casting doubt on the credibility of the charges. In support, he cites *People v. Everhart* (1974), 22 Ill. App. 3d 727. However, in *Everhart* the court noted a number of factors which cast doubt on the complainant's testimony. (22 Ill. App. 3d 727, 730-31.) In addition, the complainant testified she immediately ran home and complained to her mother, but the mother was not called to corroborate her daughter's testimony. We find the case distinguishable on its facts. Here, the testimony of the complainant and her mother constituted sufficient proof that the defendant's acts were done with the requisite intent. *People v. Thingvold* (1978), 66 Ill. App. 3d 1002, 1005.

The first claim of prejudicial trial error involves the prosecutor's closing argument. The defense counsel did not object to many of these comments either during the trial or in a post-trial motion. Any error was therefore waived. (See *People v. Edwards* (1973), 55 Ill. 2d 25, 35.) From our examination of the record we do not find the remarks to be highly prejudicial so as to constitute plain error. Some of the arguments complained of included the prosecutor's discussion of the witnesses and their credibility, but the comments were based on the evidence and were not unfair.

We specifically address, however, a statement by the prosecutor involving references to "character witnesses," to which there was an objection. The prosecutor in his initial closing statement first referred to the fact that the defendant "brought two people in to testify as character witnesses" and noted that "they weren't there. They don't know what happened." Defense counsel in closing argument responded in the context of commenting on the fact that the defendant's prior theft conviction had been a misdemeanor, stating:

"But, other than this, what do we have? We have other character witnesses that came forth including an ex-wife * * *."

Defense counsel then referred to the testimony of defendant's brother and other witnesses and stated that defendant had an excellent reputation. In rebuttal the prosecutor responded:

"How many character witnesses do we have? We had two relatives. I respect both of the relatives very much. Do we have any neighbors that came in? Current neighbors now.

This current person that he lives with, did she come in to testify as to his character? Current neighbors, other neighbors that were in the apartment complex with him when he lived there for over a year?

Did they come in and testify as to his character reputation?"

At this point defense counsel made an objection and noted at the side bar

conference that it was improper to comment on the "absence of a witness." The record does not show any ruling by the court.

■■ We conclude that the remarks were objectionable but that under all the circumstances they do not constitute reversible error.

■■ First, defendant had the duty to secure a ruling by the trial court to preserve the claimed error. (*People v. Kostos* (1961), 21 Ill. 2d 496, 499; *People v. El* (1980), 83 Ill. App. 3d 31, 36.) Moreover, the error was not raised in the post-trial motion. The Illinois Supreme Court has recently held that it is not sufficient for a plaintiff to object to an error during the trial but must specifically raise the error in this post-trial motion, or it is waived. (See *Wilson v. Clark* (1981), 84 Ill. 2d 186.) Further, improper remarks will not constitute plain error unless they constitute a material factor in the conviction, resulting in substantial prejudice to the accused. (*People v. Clark* (1972), 52 Ill. 2d 374, 390.) We conclude that no substantial prejudice was shown.

The defendant also claims that prejudicial error occurred when the trial court permitted the court reporter to read certain of the trial testimony to the jury during their deliberations. The jury had requested the testimony of the defendant, of Heather Balgeman and that of the complaining witness, relating to the time from when the girls took the bath until the complainant ran out of the Balgeman home. The defendant contends that since no transcript had been prepared the trial court was giving the court reporters too great a responsibility in determining which sections of the stenotype notes were pertinent to the jury's request.

■■ It is within the discretion of the trial court to allow or refuse the request for the review of testimony and his exercise of discretion will not be disturbed on appeal unless it has been abused. (*People v. Pierce* (1974), 56 Ill. 2d 361, 364.) In the exercise of the trial judge's discretion he may grant the jurors the opportunity of having read to them testimony that is relevant to their inquiry but which does not encompass all of the testimony of the prosecution and the defense. (*People v. Allen* (1977), 48 Ill. App. 3d 870, 873; *People v. Reynolds* (1978), 57 Ill. App. 3d 593, 597-98.) In exercising its discretion the court may properly allow testimony to be read from a court reporter's notes, although it is evident that such a procedure creates serious problems in isolating precise testimony. *People v. Hemphill* (1978), 62 Ill. App. 3d 977, 984.

■■ The judge made a careful inquiry of the court reporters and ascertained that they had found the relevant portions requested by the jury. She could properly decide that reading of all the testimony of the three witnesses outside the jury's presence would be unduly time consuming and unnecessary. In cases where a transcript is not available the trial court must carefully balance the difficulties in obtaining the requested testimony with the jury's need to rehear the testimony. Although the court

reporter omitted portions of defendant's testimony, the omitted portions were not materially different than the portions read, so no actual prejudice resulted to the defendant. Since no actual prejudice resulted from the procedure followed, we cannot say that defendant was deprived of a fair trial.

The judgment is affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.