THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES ROGERS, Defendant-Appellant.

First District (3rd Division)   No. 80—3273

Opinion filed November 3, 1982.—Rehearing denied December 14, 1982.

James J. Doherty, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Stephen R. Botti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Following a jury trial, defendant, Charles Rogers, was found guilty of attempted robbery and sentenced to a term of imprisonment of 3½ years. On appeal, he contends: (1) that he was not proved guilty beyond a reasonable doubt; (2) that the prosecution's closing argument deprived him of a fair trial; and (3) that the trial court abused its discretion in having the court reporter read the jury portions of the complaining witness' testimony.

The only occurrence witness produced by the prosecution at trial was the complainant, Captain Hemphill. Hemphill testified that at about 9:45 p.m. on June 13, 1980, he was waiting for a westbound bus near 1658 West Madison Street in Chicago. Defendant, whom he had never seen before that night, approached him and said something about knowing Hemphill from high school. Hemphill told defendant

that "he did not know me." After this conversation, defendant grabbed him by the arm and pulled him "to the side." At that time, a second person approached Hemphill from behind, and defendant asked him "to unask the motherfucking money." Defendant proceeded to go through Hemphill's pockets, finding a dime and a wallet. There was no money in the wallet, and defendant returned both items to Hemphill. Defendant then said, "We know you have the money in your shoe, brother man." At this time, a CTA bus drove up, and Hemphill ran for the bus. When he reached the bus, the bus driver would not open the door, so Hemphill ran down the street after it. While running west on Madison, Hemphill saw defendant running after him. After he passed the bus stop at Wood Street, Hemphill observed that the two men were no longer following him. He stopped at the next bus stop, Wolcott Street. A few minutes later, he saw defendant approaching him from the north. Hemphill then crossed Madison and defendant said, "Brother man, carry your motherfucking ass back." Hemphill turned and saw that defendant was walking fast. Defendant was alone at this time. Hemphill ran down Madison, saw a Chicago police car and flagged it down. He told police officers about the attempted robbery. First the police incorrectly stopped one man; Hemphill shouted to them that they had the wrong man and pointed to the defendant. The police then stopped defendant and brought him back to where Hemphill was standing. At this time Hemphill identified defendant. Shortly thereafter, Hemphill toured the area with plainclothes police officers in search of the second offender. They did not find him.

Officers Ollie Gavin and Arthur Browder of the Chicago police department testified. Their testimony corroborated Hemphill's testimony.

Defendant testified that at approximately 9:30 p.m. on June 13, 1980, he was sitting in the Skybox Lounge, a discotheque located at 1656 West Madison Street, writing his nickname, Disco King, on a $20 bill, when a person who looked like Hemphill approached and spoke with him. Defendant told this man that he had not attended Crane High School and that he did not live "out south." Following the conversation, the other man walked away. Defendant put the money in his pocket, and fell asleep for a couple of minutes. He was awakened by a person named "Junebug," and both men left the lounge together and walked a block west to a liquor store. Defendant ordered a half pint of rum, but when he reached in his pocket, he discovered his $20 bill was not there. He and Junebug then left the store and started back toward the lounge. On their way back, at approxi-

mately 9:45 p.m., defendant saw Hemphill standing by a bus stop with a couple of other people.

With regard to his confrontation with Hemphill, defendant testified that he held Hemphill's arm for a few seconds and that he had a conversation with Hemphill. Junebug was present at this time. Defendant asked Hemphill if he had attended Crane High School and if he lived "out south." Hemphill responded negatively to both inquiries. At this point, defendant said, "Man, you lying. Unask my motherfucking money." Hemphill did not respond, and defendant went through Hemphill's pockets and found a wallet and some change, perhaps only a dime. Defendant immediately returned the change, and he returned the wallet after he saw that his $20 bill was not there. Then a bus came, and Hemphill started to run toward it. Hemphill did not board the bus, and Junebug started chasing him. Defendant ran after Junebug, caught up with him after a block, and told him that Hemphill was not the man who had taken his money. Then Junebug "cut out," and defendant walked back toward the Skybox Lounge. When defendant looked back, he saw Hemphill speak with the police and the police stop another man. When the police officers approached him, he did not try to run. The officers "frisked" him, put him in their car and took him to where Hemphill was standing. On cross-examination, defendant stated that he had assumed that Hemphill had taken his money.

On the basis of this evidence, the jury found defendant guilty of attempted robbery. Defendant's first contention is that the evidence against him was so unsatisfactory as to raise a reasonable doubt of guilt. His argument is that his explanation that he merely attempted to recover a $20 bill that he mistakenly, but in good faith, believed Hemphill had taken from him a short time earlier, was far more probable and reasonable than Hemphill's testimony of an attempted robbery. He further argues that improbable aspects of Hemphill's testimony, inconsistencies in Hemphill's testimony, and inconsistencies between Hemphill's testimony and the arresting officers' testimony, raised a reasonable doubt of guilt, especially in light of defendant's reasonable explanation.

Robbery is defined by statute as the taking of "property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1979, ch. 38, par. 18—1.) And the offense of attempted robbery is committed when with intent to commit a robbery, a person does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4.) Defendant does not contend that Hemphill's

testimony failed to establish any of the elements of attempted robbery. Rather his argument goes to the weight of the evidence and the credibility of the witnesses.

It is well settled in Illinois that a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses, and that a criminal conviction will not be reversed unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1977), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.) Hemphill's testimony, if believed, was clearly sufficient to establish guilt beyond a reasonable doubt, and we will not disturb the jury's verdict.[1]

■ Defendant next contends that several closing argument comments by the prosecution deprived him of a fair trial. Several of these arguments were waived by his failure to object to the remarks during argument. (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) We elect to consider one of them. At the outset of its rebuttal closing argument, the prosecution commented that the burden to prove guilt beyond a reasonable doubt is not an "unreachable plateau" or "impossible goal" and that the burden is met every day in criminal courts throughout the nation. Similar comments in other cases have been held improper because they have "the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a proforma or minor detail." (*People v. Hopkins* (1982), 107 Ill. App. 3d 422, 429, 437 N.E.2d 722; *People v. Belton* (1982), 105 Ill. App. 3d 10, 16-17, 433 N.E.2d 1119; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86.) However, several cases have also held that such a comment, although improper, was harmless beyond a reasonable doubt. (*Hopkins; Belton; People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84, 422 N.E.2d 127.) Here, even assuming that this issue had not been waived, we conclude that the error committed did not contribute to the jury's verdict and was harmless beyond a reasonable doubt.

---

[1]We express no opinion as to whether defendant's testimony that he was mistakenly attempting to recover his own money, if believed by the jury, would support a conviction of attempted robbery. (See *People v. Uselding* (1969), 107 Ill. App. 2d 305, 309-10, 247 N.E.2d 35; but see W. LaFave and A. Scott, Criminal Law sec. 94, at 693-94 (1972).) And we specifically observe that defendant's testimony as to his "innocent mistake" is inconsistent with Hemphill's testimony as to his second confrontation with defendant. Defendant did not testify to any second confrontation.

■ Defendant did object to the prosecution's rebuttal closing argument comment that the people of the State of Illinois have a right to be free from crime and from criminals like defendant. We are of the opinion that any prejudice resulting from this comment was cured by the trial judge's statement to the jury after the comment. Although he overruled the objection, the court admonished the jury that this was merely an argument of counsel and that it was the jury's responsibility to evaluate and weigh the testimony of the witnesses.

Lastly, defendant contends that the trial court abused its discretion in having the court reporter read the jury portions of the complaining witness' testimony. After the jury had deliberated for 2½ hours, the jury sent a note to the trial judge which stated:

"The jury is split over the events surrounding the defendant pursing the plaintiff. Specifically, Mr. Hemphill testified that Mrs. (sic) Rogers and Junebug returned a second time to pursue Mr. Hemphill. Is it possible to review the testimony regarding that sequence of events? At least to discuss them."

In response to the jury's request, the trial judge, the assistant State's Attorney, defense counsel, and the court reporter reviewed the court reporter's notes of the testimony relating to the sequence of events in question. Then the trial judge, stating that the grant or denial of the request was within his discretion, had two segments of Hemphill's direct examination testimony read to the jury. In the first segment, Hemphill testified that a few minutes after the first confrontation, he saw defendant approaching him and that he crossed Madison Street. At this point, the man across the street said, "Brother man, carry your motherfucking ass back." Hemphill turned and saw that defendant was walking toward him fast, so he ran down Madison Street. In the second segment, Hemphill testified that the second time he saw defendant that night, defendant was coming from the north. Approximately 30 minutes after this testimony was read, the jury returned a verdict of guilty.

It is within the discretion of the trial court to allow or refuse a jury's request for a review of testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 364, 308 N.E.2d 577.) "In the exercise of its discretion, the trial court is charged with determining whether a review of the testimony requested would be helpful or harmful to the jury's proper deliberations." (*People v. McClellan* (1979), 71 Ill. App. 3d 611, 616-17, 390 N.E.2d 131; *People v. Bell* (1976), 44 Ill. App. 3d 185, 193, 357 N.E.2d 1256.) And it "may grant the jurors the opportunity to have read to them testimony that is relevant to their inquiry but which does not encompass all of the testimony of the prosecution and

the defense." *People v. Pallardy* (1981), 93 Ill. App. 3d 725, 730, 417 N.E.2d 851.

■ A review of the two segments of Hemphill's testimony would have been helpful to the jury because, if believed, it would render defendant's testimony that he mistakenly thought Hemphill had taken money from him incredible. Defendant had testified that after his confrontation with Hemphill on the street, he realized that Hemphill was not the person at the Skybox Lounge. If this were true, defendant would have had no reason to pursue Hemphill a second time after he knew that Hemphill had not taken his money. Indeed, defendant's testimony was inconsistent with a second pursuit. Furthermore, the testimony to be read to the jury was not lengthy, and reading it would cause no unreasonable delay. Under these circumstances, we conclude that the trial court did not abuse its discretion in permitting a review of the two segments of Hemphill's testimony.

Defendant argues, however, that the jury's note was ambiguous in that it could be construed as a request only for a review of Hemphill's testimony regarding the second pursuit or as a request to review all the testimony regarding the second pursuit. We observe that the note only referred to the testimony of Hemphill. However, even if we were to construe the note more broadly, it is clear from the record that Hemphill was the only witness to testify as to the second pursuit. Therefore, we conclude that there was no abuse of discretion in not having that part of defendant's testimony concerning the events which occurred after Hemphill ran for the bus read to the jury.

■ Defendant also argues that it was error to rely on the notes of the court reporter and that as a consequence of such reliance, inconsistent testimony given by Hemphill on cross-examination was not read to the jury. Defendant refers to Hemphill's cross-examination testimony that at the time of the second pursuit, he did not have any conversation with defendant. On direct examination, Hemphill had testified that defendant said, "Brother man, carry your motherfucking ass back." In our opinion, there is no inconsistency between the direct and cross-examination testimony because a threatening statement by the defendant to the victim is not a conversation. Since there was no inconsistency between the portions of Hemphill's testimony that was read and the omitted portion, no prejudice resulted from the procedure. (*People v. Pallardy* (1981), 93 Ill. App. 3d 725, 731.) Moreover, *Pallardy* recognized that a trial court, in the exercise of its discretion, may properly allow testimony to be read from a court reporter's notes. 93 Ill. App. 3d 725, 730.

■ Lastly, defendant argues that the trial judge's instructions to

the jury at the time the testimony was read improperly suggested that the jury should make no further requests for review of the testimony. This contention is not supported by the record. The words of the trial judge were:

> "Now, I am going to give a direction to the court reporter to read back to you those two areas of the transcript. *** Please do not make any comments to the Court, do not make any oral comments, or do not make any additional questions to the Court. If you have any questions, and I am not encouraging them, if you have any later one, they may be put in writing."

Thus, the trial judge attempted to prevent any oral questions. He did not, however, prohibit subsequent written questions.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.