THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEXTER JAMES YOUNG, Defendant-Appellant.

Second District   No. 82—1039

Opinion filed June 12, 1985.

John S. Biallas, of Neri & Hochberg, of St. Charles, and Randy K. Johnson, of Alms & Miller, of Barrington, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

The defendant, Dexter James Young, was convicted of robbery after a jury trial in Kane County, and sentenced to three years' imprisonment. He appeals, raising two assignments of error: (1) whether the defendant was proved guilty beyond a reasonable doubt; and, (2) whether the defendant was afforded a fair trial (a) because of unresponsive answers given by the State's principal witness, (b) because police officers' testimony corroborative of the State's main witness was improperly admitted, and, (c) because the State's Attorney attempted to dilute the State's burden to prove guilt beyond a reason-

able doubt during closing rebuttal argument.

The defendant was charged by indictment with the offense of robbery in violation of section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 18—1). The indictment alleged that on April 26, 1982, the defendant "took property, being United States currency, from the person of Jose Martinez Garcia, by the use of force."

The defendant entered a plea of not guilty, and the case proceeded to trial on September 27, 1982. The testimony at trial revealed the following facts.

At 1 a.m. on April 26, 1982, Jose Martinez Garcia, a Mexican citizen unlawfully in the United States, was accosted by a black man and a white woman and robbed of $500 while on a riverbank behind the Rivoli Tavern in Aurora. Through the aid of an interpreter, Garcia testified that at 11 p.m. on April 25, 1982, he went to the Rivoli Tavern carrying a little more than $500 in $100 bills in his wallet. While at the tavern Garcia consumed four drinks but was not highly intoxicated. Garcia purchased a couple of drinks for Robin Gayle Honn at her request. She was the defendant's live-in girlfriend. The defendant was in the tavern at the time playing pool.

Garcia testified that Honn asked him to leave the tavern with her to find a quiet place to talk. Prior to leaving the tavern, Garcia transferred the $500 from his wallet to his right front pants pocket because he did not know what Honn had in mind. As he left the tavern at 1 a.m., Honn followed him. Honn eventually caught up to him and the two went down to the riverbank "looking for an outing." As they reached the riverbank, Honn asked Garcia where he lived, at which time the defendant approached, grabbed Garcia and "started feeling him on his side." With Honn's assistance, the defendant tore Garcia's right pant leg, stole the money, and pushed Garcia down. As the two ran away, Honn dropped her purse, which was retrieved by Garcia.

Garcia ran to street level, where he stopped police officers Puscas and Hoffman. Since Puscas and Hoffman did not speak Spanish, they radioed fellow officers Gould and Koehnke for assistance in interpreting. The officers observed Garcia's pants were ripped and muddy, his shirt was in disarray, and he carried the purse; his speech was excited but coherent. Garcia told the officers he had been robbed and described his assailants as a tall black man and a short, stout white woman; he indicated that one of the two people who robbed him dropped the purse. A search of the purse revealed the defendant's and Honn's unemployment compensation cards and a snapshot of the defendant.

Officers Gould and Koehnke testified they knew where the suspects might be located, because minutes before being called to the scene to interpret, they saw two individuals in the parking lot near the Rivoli Tavern who met Garcia's description. They testified that at approximately 1:20 a.m. on April 26, 1982, after hearing a scream in a parking lot, they drove to the lot to investigate. The officers overheard the people say they were going to LaRoca Restaurant.

In search for the suspects, the officers traveled to the LaRoca Restaurant with Garcia. Upon arriving, the suspects, a tall black male wearing blue jeans and a vest, and a short, heavyset white woman, were identified by Garcia, placed under arrest for robbery, and searched. A search of Honn produced two $100 bills and some change in her rear pocket. The officers observed nothing unusual about the condition of defendant's clothes, noting that they were neither disheveled, torn nor covered with dirt.

The robbery scene was damp, muddy, well lit and approximately 50 to 60 feet away from where the officers first observed the people in the parking lot. Officer Gould testified that to get from the scene of the robbery to the parking lot, one had only to walk along the riverbank and up into the parking lot.

Robin Honn testified that she arrived at the Rivoli Tavern at approximately 9 p.m. on April 25, 1982, accompanied by two girlfriends. The defendant arrived shortly thereafter. She testified that Garcia arrived at approximately 10 p.m., approached the girls' table and offered them all a drink. They accepted, and Garcia gave Honn $100 to pay for 12 drinks. Honn admitted drinking 12 Scotch and sodas that night and smoking two marijuana cigarettes. Honn indicated that Garcia was drunk and spoke sloppily; she commented that Garcia followed her around and repeatedly propositioned her while she told him to go away. She testified that the defendant shot pool during this time and had no contact with Garcia. When the tavern closed, Honn indicated that she and her friends went into the parking lot and rolled a joint while they waited for the defendant to complete his pool game. Minutes after the defendant arrived, police officers stopped in front of the group to observe them. The group then walked to the LaRoca Restaurant, where Honn and the defendant were arrested and searched. Honn testified that the $240 in her possession during the search was received from the defendant. However, impeaching evidence revealed that on the morning of the occurrence she stated, "I have no idea how the $100 got in my pocket."

Honn admitted that neither she nor the defendant was working at the time but that the defendant picked up an occasional construction

job. Honn also admitted that on the evening she was arrested, she had carried a purse, and first discovered it missing when she was at the police station; she last remembered seeing the purse when she was at the Rivoli. She further testified that when she left the Rivoli, she carried her jacket on her arm and "that [was] it, I guess." She stated that she, as opposed to Garcia, had her purse, and that Garcia did not have any identification taken from it.

Paul Smith, a contractor for whom the defendant occasionally worked, testified that on the morning of April 25, 1982, he paid the defendant $250 for roofing work completed the previous week. He stated that he paid the defendant one $50 and two $100 bills. The defense rested.

The jury found the defendant guilty of the offense of robbery, and the trial court entered judgment on the conviction, sentencing the defendant to three years' imprisonment. The defendant filed a motion for a new trial, which was denied.

■ The defendant argues, first, that Garcia's testimony is not worthy of belief because Garcia was illegally present in the United States, because a defense witness testified that Garcia was staggering drunk on the evening of the offense, and because the defendant's physical appearance did not support Garcia's testimony that the defendant was involved in a fight by a muddy riverbank.

In order to sustain a conviction for the offense of robbery, the State must prove beyond a reasonable doubt that the defendant took property from the person or presence of another by the use of force or by threatening the imminent use of force. (See Ill. Rev. Stat. 1981, ch. 38, par. 18—1.) The State asserts it met this burden of proof because Garcia's testimony was not so incredible nor was the evidence so improbable as to raise a reasonable doubt of the defendant's guilt. The State concedes that, although inconsistencies in the evidence exist, they were minor and fully presented to the jury for determination.

A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) If the decision of the trier of fact is to convict, and that decision is founded on credible and substantial evidence, it will not be set aside because of minor inconsistencies which the trier of fact resolved in the State's favor. *People v. Devine* (1981), 101 Ill. App. 3d 158, 163.

The defendant first argues that because Garcia testified he was illegally within the United States and because Honn testified Garcia was staggering drunk on the evening of the occurrence, Garcia's testi-

mony, as the only eyewitness, sufficiently lacked credibility to warrant reversal of the defendant's conviction. The defendant cites *People v. Villalobos* (1977), 53 Ill. App. 3d 234, in support of his contention; however, the facts in *Villalobos* are clearly distinguishable from the facts herein. In *Villalobos*, one of the reasons the appellate court was compelled to reverse the defendant's conviction for murder was the lack of credibility of the only eyewitness. The eyewitness in *Villalobos* gave several different conflicting statements regarding the occurrence, admitted freely he had a criminal record for burglary, conspiracy and arson, and testified he was drunk when the killing occurred. (53 Ill. App. 3d 234, 239.) In the present case, however, Garcia did not make conflicting statements regarding the facts of the robbery. Moreover, although Garcia admitted drinking four drinks on the night of the robbery, he denied being drunk; the testimony of the four investigating officers supported his condition of sobriety. The only contradictory testimony was that of Honn, who herself admitted to having consumed 12 Scotch and sodas and smoked two marijuana cigarettes on the evening of the occurrence. Moreover, Honn's testimony regarding the whereabouts of her purse and concerning how she acquired the currency found on her person raises doubt as to her credibility. The fact that Garcia was an illegal alien was brought to the jury's attention. The jury resolved these questions against the defendant.

Second, the defendant contends there was nothing unusual about his physical appearance when he was arrested at the LaRoca Restaurant. The defendant claims that had he been involved in a robbery and fight at the riverbank, his clothes would have been torn and muddy, similar to the condition of Garcia's clothes. Although Garcia struggled to prevent the robbery at the riverbank, no evidence demonstrates he was successful at defending himself against the defendant and Honn's attack. The record discloses that the defendant and Honn totally dominated the confrontation, pushing Garcia down as they fled. The jury had the opportunity at trial to contrast the physical appearance of Garcia, who measured approximately 5 feet 8 inches tall, and the defendant, who measured 6 feet 5 inches tall and weighed 200 pounds. The jury found nothing incongruous between Garcia's version of what occurred and the defendant's physical appearance after the robbery.

Third, the defendant contends an inconsistency between Garcia's testimony and Officer Koehnke's testimony further supports reversal of his conviction. This inconsistency involved a minor detail of whether Honn and Garcia decided to find a quiet place to talk before leaving the Rivoli, or whether Garcia left the Rivoli first, followed by

Honn, and then decided to find a quiet place to talk. It is the province of the trier of fact to determine the effect of a prior inconsistent statement upon the credibility of a witness, since an inconsistent extrajudicial statement does not, *per se*, destroy the probative value of that witness' testimony; the trier of fact may accept the credibility of the witness notwithstanding the impeaching inconsistent statement. (*People v. Pavelich* (1979), 76 Ill. App. 3d 779, 782.) Although this minor inconsistency regarding the events leading up to the scene of the robbery exists, the record demonstrates that Garcia's testimony relative to the robbery is consistent with the testimony of the investigating police officers.

Where the State and the defense present plausible versions of the facts, it remains the jury's duty to choose between them to determine the truth. (*People v. White* (1980), 88 Ill. App. 3d 788, 792.) Where the version chosen by the jury was not so improbable as to be incredible, the verdict will not be disturbed. (88 Ill. App. 3d 788, 792.) We hold the jury's verdict was proper.

■ The defendant next contends his conviction should be reversed because he was not afforded a fair trial. He proposes three theories in support of this contention: (1) that prejudicial error resulted from unresponsive answers given by Garcia; (2) that the police officers' testimony corroborative of Garcia was improperly admitted; and, (3) that the State's Attorney's attempt to dilute the State's burden to prove guilt beyond a reasonable doubt during closing rebuttal argument prejudiced the defendant's case.

The defendant contends Garcia's unresponsive answers to questions asked on cross-examination prejudiced his right to a fair trial. In response to the question, "Where did you go once you went on New York Street?" Garcia stated, "That is where they robbed me." In response to the question, "Did you turn down that street that goes across?" Garcia stated, "I went straight toward the river. That is where they robbed me." In response to the question, "Were you somewhere on the riverbank in back of the Rivoli?" he answered, "Right there where the river is is where they stole the money." The defendant objected and moved to strike this testimony. The trial court sustained the objection and granted the motion to strike. The trial judge instructed the jury to disregard all matters stricken.

The defendant argues that, despite the court's ruling in his favor, Garcia's unresponsive answers reinforced his testimony on direct examination that the defendant committed the robbery. In support of this argument, the defendant relies on *People v. Kirkwood* (1959), 17 Ill. 2d 23, a case actually supportive of the State's position. In *Kirk-*

*wood,* our supreme court held that even though a remark is improper and not called for by the question, its prompt striking from the record eliminates its prejudicial effect. (17 Ill. 2d 23, 31.) The defendant herein was not prejudiced. The unresponsive remarks were cumulative to other evidence.

Since the defendant's assertion of prejudicial error was not addressed in the defendant's post-trial motion, the State argues the issue is waived for purposes of review on appeal. It is not sufficient that a party object to an error during the trial to preserve it for review. (*People v. Andino* (1981), 99 Ill. App. 3d 952, 954.) Rather, he must specifically raise the issue in his post-trial motion, or it will be deemed waived. (99 Ill. App. 3d 952, 954-55.) Since the defendant failed to raise this contention in the post-trial motion, no argument was made, and the unresponsive answers do not constitute plain error, the error has been waived. See *People v. Clark* (1972), 52 Ill. 2d 374, 390; *People v. Andino* (1981), 99 Ill. App. 3d 952, 955; *People v. Pallardy* (1981), 93 Ill. App. 3d 725, 729-30.

■ The defendant also maintains he was denied a fair trial when the investigating police officers were permitted to testify that Garcia had identified the defendant as the person who robbed him. Officer Hoffman testified the defendant told him at the outset that he had been robbed. Officer Gould testified the defendant pointed out the two people who had robbed him. Officer Koehnke testified that as they approached, Garcia pointed to Honn and the defendant.

The defendant contends the verdict should be reversed as the result of the jury's hearing Garcia's version more than once. (See *People v. Andino* (1981), 99 Ill. App. 3d 952, 957.) However, Garcia's accusation that a robbery occurred is not the only evidence supporting the defendant's robbery conviction. The evidence produced at trial included $240 discovered on codefendant Honn and Honn's purse, which was retrieved by Garcia immediately after the robbery.

The State maintains the evidence reveals the procedure followed by each officer during the investigation, and explains their conduct. Even if the testimony constituted hearsay, the admission of such hearsay evidence is harmless error, since there is uncontroverted eyewitness testimony sufficient to sustain the conviction. (*People v. Gaines* (1981), 88 Ill. 2d 342, 365-66, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.) Where this error is shown to exist, such error does not compel reversal. *People v. Emerson* (1983), 97 Ill. 2d 487, 502; *People v. Robinson* (1978), 73 Ill. 2d 192, 200; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92-93.

■ ■ The defendant further argues he was denied a fair trial due

to prejudicial remarks made by the State's Attorney during closing rebuttal argument, thereby entitling him to reversal of his conviction. The State's Attorney made the following remarks:

"Ladies and gentlemen of the jury, the burden in this case is beyond a reasonable doubt, it is not beyond a shadow of a doubt. You can have a doubt as long as it is a reasonable doubt. That degree of burden is met everyday in court rooms like this throughout the country. It is not an insurmountable thing, and please keep that in mind. Please keep that in mind when you are deliberating."

The defendant contends these prejudicial statements, considered individually and cumulatively, effectively denied him a fair trial.

The defendant's argument is waived by his failure to object to the remarks during argument. (See *People v. Rogers* (1982), 110 Ill. App. 3d 410, 414.) Further, since the defendant did not set forth the error with specificity in the post-trial motion, the error was not preserved for appeal. See *People v. Ammons* (1983), 120 Ill. App. 3d 855, 859-60.

■■ While such comments are improper because they have the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a *pro forma* or minor detail (*People v. Frazier* (1982), 107 Ill. App. 3d 1096, 1102; *People v. Belton* (1982), 105 Ill. App. 3d 10, 16-17; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285), here the error is harmless beyond a reasonable doubt and did not contribute to the jury's verdict. (See *People v. Hopkins* (1982), 107 Ill. App. 3d 422, 429; *People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84.) We hold that the defendant received a fair trial.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.