THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES L. CLODFELDER, Defendant-Appellant.

Fourth District   No. 4—88—0053

Opinion filed December 1, 1988.—Rehearing denied December 15, 1988.

Daniel D. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Nancy Owen, State's Attorney, of Charleston (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On December 9, 1987, following a jury trial in the circuit court of Coles County, defendant James L. Clodfelder was convicted of two

counts of burglary and two counts of theft. The court subsequently vacated the theft convictions, entered judgment on the burglary convictions, and sentenced defendant to an extended term of 12 years' imprisonment. The court ordered the sentence of imprisonment be served consecutively to two sentences it had previously imposed for crimes defendant committed while on pretrial release.

On appeal, defendant maintains: (1) he was not proved guilty beyond a reasonable doubt; (2) there was no probable cause to arrest defendant, and, therefore, the court erred in denying defendant's motion to suppress items seized without a warrant and statements made subsequent to the arrest; (3) defendant was deprived of his right to a fair trial by comments made by the State during closing argument; and (4) the trial court erred in sentencing defendant to consecutive terms of imprisonment. We affirm the convictions, reverse the sentence and remand for resentencing.

Police officer George Beason testified at trial that, on October 15, 1986, at 4:50 a.m., he responded to a call to the home of Brenda Hutton in the 900 block of North 13th Street in Mattoon. He received a description from her of a "tall, slender" person wearing dark clothes, a hat, and gloves, walking through yards and looking into cars near her home. Beason said that he searched the area, and at 5:04 a.m., he saw a man coming up an embankment from some railroad tracks. He said he stopped him near a gas station on Route 45. He said the man produced military identification, and he learned the man was James Clodfelder, who was wearing military coveralls, gloves, and a hat. He said Sergeant Brian Janes, his "back-up" unit, ordered him to detain defendant, and subsequently ordered him to take defendant into custody.

Sergeant Janes testified that, after he spoke with Hutton at approximately 5 a.m., and obtained a description of the person she had seen, he was informed by radio that Officer Beason had detained defendant. Janes then drove to the place where defendant was being detained. He said he recognized defendant as someone he had known for 9 or 10 years. He said he then conducted a search of the area and found a green Army duffel bag, an aluminum suitcase, a green toolbox, and a six pack of beer in a railroad "subway ditch," which was approximately 100 yards from the place where defendant was being detained. Janes testified he then opened the parcels and found tools in the toolbox, papers with defendant's name in the suitcase, and Army clothing and a generator in the duffel bag. He said he then, at 5:15 a.m., instructed Officer Beason to place defendant under arrest and took the items found in the ditch to the Mattoon police station.

Police Captain David O'Dell testified that on October 15, 1986, he arrived at the police station at 5:30 a.m. and began examining the tools which were inside the toolbox taken from defendant. He said that some of the tools were marked "H. Perkins." He said he began interrogating defendant at approximately 6:40 a.m., and defendant told him: (1) he was on leave from the Army; (2) the previous evening, he was returning to Fort Carson, Colorado, missed his bus, and decided to stay out all night; (3) he purchased some beer to drink along the railroad tracks; (4) he was subsequently arrested; and (5) he had purchased the toolbox and tools two or three years prior to that date. According to O'Dell, defendant stated he did not know the individual from whom the toolbox had been purchased and was not able to give any "physical or detailed description" of how the purchase was conducted. O'Dell also testified that defendant gave no explanation of his possession of the generator. Finally, O'Dell explained that defendant signed a receipt for the property which had been seized from the railroad ditch.

Harold Perkins testified that he lived at 905 North 12th Street in Mattoon, and on October 15, 1986, he learned his tools and toolbox had been stolen. He identified the green toolbox found among defendant's possessions as one he had owned for over 20 years, and he identified the tools inside the box as belonging to him. He pointed out the tools which were engraved with his name.

Charles Johnson testified he was the regular driver of a truck belonging to Howell Asphalt Company. He testified that, on October 14, 1986, a control box for an "auto generator" had been fastened to the truck. He indicated that on October 15, 1986, someone had apparently attempted to remove the control box, and he found loose wires in the truck's interior. He identified the generator, found in defendant's duffel bag, as having been removed from that truck.

Defendant did not testify or provide any witnesses on his behalf. Following closing arguments, the jury found defendant guilty of two counts of burglary and two counts of theft over $300.

Defendant argues he was not proved guilty beyond a reasonable doubt, because the State presented no evidence defendant actually entered the two motor vehicles, and his conviction was based solely on an inference arising from defendant's possession of property taken from those vehicles.

■ The question of the inferences which may arise from the unexplained recent possession of stolen property is explained in the seminal case of *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160.

The issue arose in that case in connection with the giving of a jury instruction concerning that inference. No jury instruction on that subject was requested or given here, but the rule stated there bears upon the sufficiency of the proof here. There, the court indicated a trier of fact may infer guilt in a burglary case from the exclusive and unexplained possession of recently stolen property without violating due process if: (1) there was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (2) his guilt of burglary is more likely than not to flow from his recent, unexplained, and exclusive possession of burglary proceeds; and (3) there was corroborating evidence of defendant's guilt. *Housby*, 84 Ill. 2d at 424, 420 N.E.2d at 155.

■ Here, the articles found by Sergeant Janes included items shown to have been recently taken in burglaries of two vehicles and were with a suitcase which contained papers with defendant's name upon them and were in an area where defendant had just left. The testimony of O'Dell contained admissions by defendant inferring he had recent possession of the property seized near the bottom of the embankment. Under these circumstances, the trier of fact could reasonably conclude that defendant had possession of these items and the items contained therein and then left them shortly before being detained by Officer Beason. Defendant offered no explanation at trial for his possession of the items shown. The time frame between the possible times of the burglaries and any possession by defendant was such that there was a rational connection between his possession and the burglaries when the evidence of defendant's prowling in the area is also considered. The same evidence also leads to the conclusion that defendant's guilt of burglary, more likely than not, flows from the possession. The surrounding circumstances also provide the necessary corroboration. Under the *Housby* doctrine, evidence furnishing the necessary corroboration may also be used to support the other elements required.

Under the proof presented, a rational trier of fact could find the existence of the essential elements of the two burglaries to have been proved beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

Defendant's motion to suppress was aimed at his arrest and any evidence or statements obtained as a result thereof. The evidence received on the motion to suppress was much the same as the portion of the evidence at trial which would bear upon the issue of suppression.

■ We conclude that, prior to the time defendant was taken to the police station at Janes' direction, any restrictions upon defendant's liberty were justified under the precedent of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Evidence was presented that police were told that a man resembling defendant had been prowling and looking in cars in the area near where Beason observed defendant walking out of a submerged area of railroad tracks. Shortly after Beason detained defendant, Janes arrived on the scene. Janes testified at the suppression hearing that he recognized defendant as a burglar.

The propriety of Janes' seizure of the duffel bag, toolbox, and suitcase presents a close question. Had defendant had these items with him when he was detained by Beason, the circumstances justifying the *Terry* stop would not have justified the search or the seizure of the property. However, we conclude the trial court could have found this property to have been abandoned. This is not a case where an accused was deemed to have abandoned property thrown away during flight. (*Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445; *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941, *cert. denied* (1984), 469 U.S. 840, 83 L. Ed. 2d 81, 105 S. Ct. 142.) On the other hand, it is not a case where a person places a suitcase on a train platform and walks to the end of the platform as in the hypothetical described by defendant. There, the possessor of the suitcase clearly intends to retain a privacy interest in the suitcase.

Unlike at trial, defendant did testify at the hearing on the motion to suppress but limited this testimony to explaining that as he stood by a road after walking up the embankment from the railroad tracks, he saw Beason approaching in a squad car. Defendant did not testify to any intention to go back and retrieve the items which were seized. Nothing in the evidence indicated that defendant said anything to the awaiting officers concerning any such intention or any intention to protect that property. One intending to maintain a right of privacy in property left on a railroad embankment would be very unlikely to take no steps to have the property protected in some way. Thus, the court could have concluded that defendant, who left the property along the embankment by railroad tracks at an early morning hour, had no expectation to preserve privacy as to those items. This is all that is necessary to constitute abandonment which justifies a seizure of property even absent a showing of probable cause. See 1 W. La-Fave, Search & Seizure §2.6(b) (2d ed. 1987).

By the time defendant was interviewed by O'Dell, defendant had been detained for over an hour. Even if the permissible *Terry* stop

was not terminated when Beason took him to the police station, the custody exercised by the police became a full-fledged arrest by the time of their interview. (*United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637; 3 W. LaFave, Search & Seizure §9.2(f), at 385-87 (2d ed. 1987).) This is the reason that O'Dell should not have been permitted to testify as to the statements made by defendant during that interview unless the officers had probable cause to make that arrest. We conclude the trial court was justified in determining probable cause did exist when defendant was taken to the police station. Even though the officers had no knowledge of any particular offense having occurred, they knew (1) defendant likely had recently possessed items which appeared to be stolen, and (2) a person resembling him had been seen looking into automobiles near that area, all at a very early hour in the morning.

In *People v. Agnew* (1987), 152 Ill. App. 3d 1037, 504 N.E.2d 1358, an officer who had stopped a car for a traffic violation found many cartons of cigarettes in the vehicle. The officer had no knowledge of any cigarette thefts. The officer arrested the defendant, who was later tried and convicted of burglary. On appeal, the court held the arrest was without probable cause, and evidence of the cigarettes should have been suppressed. Here, the officers had no knowledge of any relevant offense having been committed when defendant was taken into custody under similarly suspicious circumstances. There, unlike here, the arrest was based solely upon the possession of property likely stolen and was not corroborated by evidence a person resembling defendant had been looking into cars or buildings during the nighttime.

Defendant next complains he was deprived of his right to a fair trial, because the prosecutor, in closing argument, defined the term "reasonable doubt."

At the beginning of her closing argument, the prosecutor said "[n]ow, this is proof beyond a reasonable doubt. It is not beyond any doubt. It is not beyond all doubt, but it is only beyond a reasonable doubt we gladly accept." At the close of her rebuttal argument she said:

> "Not—it is reasonable doubt. It [is] not any doubt. It is not all doubt. It is reasonable doubt. Here there is no reasonable doubt as to defendant's guilt, ladies and gentlemen of the jury. True, he was not caught walking into the camper or climbing out of the truck; but if you say that no one can be prosecuted unless they are caught directly in the act of committing a crime, basically you are saying that the reasonable doubt standard is not a

reasonable doubt standard but it is a standard of any doubt or all doubt."

■ Defendant contends this argument was improper, because it operated to lessen the State's burden of proof in the eyes of the jury. To support his argument, defendant relies on *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103. There, this court found improper the prosecutor's argument that "reasonable doubt" did not mean beyond all doubt but that it is "doubt based upon reason." (*Eddington*, 129 Ill. App. 3d at 780, 473 N.E.2d at 127.) Defendant also relies on *People v. Rogers* (1982), 110 Ill. App. 3d 410, 414, 442 N.E.2d 529, 532, where the prosecutor's argument that the State's burden was "not an 'unreachable plateau' or [an] 'impossible goal' " was found to be improper. The appellate court determined the remarks, however, did not contribute to the verdict and were harmless beyond a reasonable doubt.

Here, defendant failed to object to the comments made by the prosecutor during her closing arguments and failed to preserve the issue in his post-trial motion. Thus, any error is deemed to be waived. However, it is clear that, in Illinois, the concept of reasonable doubt needs no definition. (*People v. Cagle* (1969), 41 Ill. 2d 528, 244 N.E.2d 200.) This argument was improper, but it does not appear to have contributed to the verdict, and it did not amount to plain error.

■ Finally, defendant argues the consecutive sentence imposed must be vacated, because under a statute in effect at the time the offense was committed, defendant was not eligible to receive a consecutive sentence.

At the time the offenses which are the subject of this case were committed, section 5—8—4(h) of the Unified Code of Corrections provided:

> "(h) If a person charged with a felony commits a separate felony while on pre-trial release, any sentence imposed upon conviction of that separate felony shall be consecutive to any sentence imposed upon conviction of the original felony." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(h).)

That section was amended, effective January 1, 1988, to state as follows:

> "(h) If a person charged with a felony commits a separate felony while on pre-trial release, the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(h).

Here, while defendant was on pretrial release, he committed two

other offenses: violation of bail bond and unlawful use of a weapon by a felon. The prosecutor chose to try defendant, in two separate trials, for those offenses prior to trying him for the instant burglary and theft charges. He was sentenced to a term of seven years' imprisonment on the offense of unlawful use of a weapon by a felon and five years' imprisonment on the offense of violation of bail bond.

At the sentencing hearing, following the burglary and theft convictions, the prosecutor argued, and the court agreed, that it was required to impose a consecutive sentence under section 5—8—4(h) of the Unified Code of Corrections, because defendant committed separate felonies while on pretrial release. The court also found defendant was eligible to receive an extended-term sentence because he had been convicted of two burglaries in 1978.

Defendant maintains that the unambiguous language of the statute in effect at the time he committed the offense precludes the court from imposing consecutive sentences unless judgment on the original felony sentence is entered prior to the sentence for the subsequent felony. Defendant argues that because the statute imposes additional punishment upon conviction for a subsequent offense, the statute is highly penal and must be strictly construed. (*People v. Phillips* (1978), 56 Ill. App. 3d 689, 695, 371 N.E.2d 1214, 1218-19.) We agree that the clear language of the former statute controls. Consecutive sentences are not mandated by the statute in effect at the time the offense occurred.

Accordingly, the court erred in imposing a consecutive sentence based upon the conclusion such a sentence was statutorily required. The sentence is reversed and the cause remanded for resentencing.

Affirmed in part; reversed in part and remanded for resentencing.

McCULLOUGH, P.J., and LUND, J., concur.